*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0333p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

HENRY O'HARA,

> *Petitioner-Appellant,*

*v.*

No. 06-3455

ANTHONY BRIGANO, Warden,

> *Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00052—Susan J. Dlott, District Judge.

Argued: July 26, 2007

Decided and Filed: August 21, 2007

Before: KEITH, MOORE, and COLE, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Elizabeth E. Agar, CROSWELL & ADAMS, Cincinnati, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Elizabeth E. Agar, CROSWELL & ADAMS, Cincinnati, Ohio, for Appellant. Stuart A. Cole, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

R. GUY COLE, JR., Circuit Judge. Henry O'Hara, an Ohio prisoner, filed a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction on numerous grounds. The district court denied O'Hara habeas relief on all nine of his claims. For the reasons that follow, we **AFFIRM** the denial of O'Hara's petition for issuance of a writ of habeas corpus.

**I.**

**A.**

O'Hara was convicted by a jury in Hamilton County of one count of rape, in violation of Ohio Revised Code § 2907.02(A)(2), and one count of kidnapping, in violation of Ohio Revised Code § 2905.01(A)(4). On April 20, 2000, O'Hara was sentenced to consecutive terms of ten years' imprisonment for rape and eight years' imprisonment for kidnapping. Pursuant to 28 U.S.C.

1

§ 2254(e)(1), we take the facts of this case from the decision, on direct review, of the Ohio Court of Appeals:

On December 27, 1999, at approximately 12:45 p.m., Maureen Hicks, while on a lunch break from work, entered a La-Z-Boy Furniture store to drop off some paperwork and a check as part of her job duties. After leaving the store, she walked over to her vehicle, a Chevrolet Venture minivan, and noticed O'Hara in the front passenger seat of the vehicle parked next to it.

After Hicks seated herself in her van, she waited, expecting O'Hara to leave his vehicle. O'Hara got out of his car but, instead of moving on, opened the unlocked door of Hicks's van and told her to scoot over. Hicks testified that O'Hara tried to calm her by telling her that he was not going to hurt her, and that he only needed a ride. Hicks further testified that she then told O'Hara, if that was the case, to take the van, not her. Although Hicks sought to alert others by honking her horn, no one responded. O'Hara became angry, grabbed her hair, and shoved his way into the van. According to Hicks, O'Hara was now cursing loudly and reaching into his coat pocket, as if he had a gun, while threatening to "blow her brains out." O'Hara told Hicks several times not to look at him because he did not want her to see what he looked like.

O'Hara ordered Hicks down on the floor of the van and then drove onto the Cross County Highway. Hicks testified that along the way O'Hara told her that he was sorry "that he had to do this," that he was a churchgoing man, and that he was going to let her go. He denied any intent to rape her. O'Hara eventually stopped the vehicle alongside the highway. Hicks testified that O'Hara then asked her if she had ever fantasized about having sex with a black man, and more specifically (and more graphically) if she had ever had a black man perform cunnilingus upon her. In what ensued, O'Hara removed Hicks's underclothes and forcibly performed the act upon her. According to Hicks, O'Hara then remarked upon the size of his penis and asked her if she wanted to have sexual intercourse. Hicks testified that she replied that she just wanted to be let go. O'Hara then drove Hicks back to the La-Z-Boy parking lot.

Hicks noticed and remembered the license plate of the car that O'Hara had earlier been sitting in. She stated that O'Hara told her that he was sorry for what he had done but that "black men aren't like white men," and that once he saw her he had to have her. According to Hicks, O'Hara also expressed his desire that she not go to the police, and told her that he was going to go home and engage in sexual self-gratification with his unusually large penis while thinking about her.

Hicks testified that, before getting out of the van, O'Hara asked her for twenty dollars because his car needed gas. She handed him two twenty-dollar bills. She testified that, to her disbelief, O'Hara then began crying and proclaiming that he was a churchgoing person with a wife and two children, and that he had never done anything similar before. According to Hicks, O'Hara asked for a kiss, which she refused, and he then got out of the van and allowed her to drive off.

Hicks subsequently drove to a fire station on Springdale Road and requested the receptionist to contact the police. When the police arrived, she gave a statement, including the license-plate number of the vehicle O'Hara had been using, and was driven to the Hamilton County Sheriff's station on Hamilton Avenue. Later she was taken to University Hospital for examination.

Police traced the license-plate number Hicks had given them to O'Hara's brother, "T.J." O'Hara was then arrested on January 10, 1999, positively identified by Hicks, and charged with kidnapping and rape.

O'Hara testified that on December 27, 1999, he and Hicks were far from strangers. He testified that he had first met Hicks in a Wal[-]Mart store in either mid-October or early November of that year. According to O'Hara, although shopping with his then wife, he had struck up a conversation with Hicks and given her his telephone number. He stated that he received a telephone call from Hicks about a week later, after he had forgotten about her, in which she suggested that they meet again at the Wal[-]Mart. According to Hicks, their subsequent meeting began an adulterous relationship that involved Hicks coming over to his house for sexual trysts. He stated that Hicks was known by his brothers and by a nephew, Charlie.

O'Hara testified that on the day of the alleged offense he received a telephone call from Hicks asking him to meet her at a K[-]Mart on Colerain Avenue. He testified that when they met, he got into Hicks's van, as he had done on many prior occasions, and that she then drove them to a bank, where he waited in the van while she went inside. He stated that afterward they drove together to the La-Z-Boy store, where Hicks paid a bill, and that they next drove to his home. He stated that they "began to get intimate," but that he did not perform oral sex upon her. He testified that his brother, "T.J.," who was staying at his house, then interrupted them. According to O'Hara, T.J. was wearing boxer shorts and was exposing himself in an obvious sexually aroused state. He testified that his brother's behavior frightened Hicks, that she wanted to leave, and that she then drove them back to the parking lot at K-mart. He stated that he felt that Hicks was blaming him for bringing her back to his home for a ménage a trois with his brother, which had not been the case. He described Hicks as being angry with him, but not too angry to give him a goodbye kiss when he asked for one.

O'Hara stated that he saw Hicks in public after that, and that she refused to talk to him. He stated that he assumed that Hicks's indifference was because of his brother's sexually threatening behavior and her belief that he had somehow attempted to engage her in a ménage a trois.

O'Hara's brother T.J. was not called as a defense witness. His nephew, Charles, testified that on one occasion he had seen his uncle with a white woman whom he now recognized as Hicks. Both O'Hara and Charles had records of numerous, significant criminal convictions. The detective who had arrested O'Hara stated that O'Hara did not know Hicks's last name at the time he was taken into custody, despite his professed intimate relationship with her. (Nor was O'Hara aware of a rose tattoo that Hicks had on her ankle and displayed to the jury in rebuttal.) Contrary to his testimony at trial, O'Hara told the detective that he had had oral sex with Hicks that afternoon, and that T.J. was not at his house when that had occurred. O'Hara also told the detective that he did not know why Hicks would have made up the charges against him. Asked to explain the discrepancies between his statement to the detective and his trial testimony, O'Hara stated that he had only admitted to having oral sex with Hicks because the detective had promised to drop the kidnapping charge if he did so, and that he had lied about T.J. not being at his house because he did not know what T.J. had told the detective in a separate interview.

*State v. O'Hara*, No. C-000314, 2001 WL 725410, at *1-3 (Ohio Ct. App. June 29, 2001).

**B.**

1.      *Direct Appeal*

O'Hara appealed his conviction to the Ohio Court of Appeals. O'Hara raised six claims through counsel and several other claims pro se. The Ohio Court of Appeals denied O'Hara's motion to proceed with his pro se brief, explaining that "[O'Hara] should submit to his appointed counsel all issues he wishes to have the Court consider, so that counsel may incorporate them in the brief that is filed by counsel." On June 29, 2001, the Ohio Court of Appeals affirmed the trial court's judgment. *O'Hara*, 2001 WL 725410, at *1.

O'Hara appealed to the Ohio Supreme Court, raising the same issues he raised before the Court of Appeals. O'Hara's counsel also incorporated in his brief to the Ohio Supreme Court several of O'Hara's pro se claims, which O'Hara had previously raised before the Ohio Court of Appeals. The Ohio Supreme Court summarily dismissed the appeal in 2002, stating that it did not "involv[e] any substantial constitutional question." (Joint Appendix ("JA") 332.)

2.      *Post-Conviction Petition*

On April 6, 2001, O'Hara filed a post-conviction petition in the Hamilton County Common Pleas Court, arguing that the Hamilton County Sheriff's Department's crime laboratory had newly discovered exculpatory evidence and that his trial counsel was ineffective because he failed to subpoena T.J. O'Hara (O'Hara's brother). According to O'Hara, T.J. was an eyewitness who could corroborate O'Hara's version of events. The trial court denied O'Hara's post-conviction petition, concluding that the claims could have been raised at trial or on direct appeal and therefore were barred by Ohio's res judicata rule.

O'Hara appealed to the Ohio Court of Appeals. On February 27, 2002, the Ohio Court of Appeals affirmed the trial court's decision. O'Hara then appealed to the Ohio Supreme Court, arguing that his due process rights were violated by the denial of an evidentiary hearing under Ohio Revised Code § 2953.21. The Ohio Supreme Court, on June 12, 2002, dismissed O'Hara's appeal.

3.      *Application for Reopening (*Murnahan *Application)*

While continuing to challenge his conviction on direct appeal, on August 8, 2001, O'Hara also filed a pro se application to reopen his appeal ("*Murnahan* application") in the Ohio Court of Appeals. Under Ohio Appellate Rule 26(B), "[a] defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel." Ohio R. App. P. 26(B). O'Hara alleged that his appellate counsel was ineffective for failing to raise several claims. Ultimately, O'Hara's *Murnahan* application was denied by the Ohio Court of Appeals because O'Hara failed to submit a sworn statement with the application as required by Ohio Appellate Rule 26(B)(2)(d). The Ohio Court of Appeals also noted that it was striking O'Hara's brief because, when combined with O'Hara's application, it exceeded the ten-page limit prescribed by Ohio Appellate Rule 26(B)(4).

O'Hara appealed the appellate court's rejection of his *Murnahan* application, but the Ohio Supreme Court dismissed his appeal on June 12, 2002.

4.      *Federal Habeas Corpus*

O'Hara filed an application for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. On December 5, 2005, the magistrate judge issued a Report and Recommendation which concluded that O'Hara's habeas petition should be dismissed. (Mag. J. Report 1-34.) The district court adopted the magistrate judge's recommendation on March 6, 2005.

O'Hara brought this appeal.

## II.

## A.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to O'Hara's habeas petition because the petition was filed in 2003, after AEDPA's effective date of April 24, 1996. *See Allen v. Yukins*, 366 F.3d 396, 399 (6th Cir. 2004) (citing *Lindh v. Murphy*, 521 U.S. 320, 336 (1997)). We review de novo the district court's decision to deny a writ of habeas corpus. *Gonzales v. Elo*, 233 F.3d 348, 352 (6th Cir. 2000). For claims adjudicated on the merits in state court, AEDPA limits our ability to grant the writ to situations where the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to clearly established law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring in part). A state court decision involves an unreasonable application of federal law if the decision is "'objectively unreasonable' and not simply erroneous or incorrect." *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007) (quoting *Williams*, 529 U.S. at 409-11.). Lastly, a state court's findings of fact are presumed correct; O'Hara has the burden of rebutting this presumption by clear and convincing evidence. *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

## B.

O'Hara raises nine claims on appeal: (1) no rational trier of fact could have found each element of the offenses beyond a reasonable doubt; (2) the prosecution failed to disclose exculpatory evidence prior to trial; (3) the trial court denied the jury's request to rehear certain testimony; (4) the trial judge had an ex parte communication with a juror; (5) O'Hara's trial counsel was ineffective because (a) he failed to object to the trial court's denial of the jury's request for testimony, and (b) he withdrew a motion to suppress O'Hara's taped statements to police which were improperly obtained; (6) the trial court and prosecution erred in keeping Hicks sequestered throughout the trial; (7) the prosecution showed the jury improper exhibits and made improper statements during closing arguments; (8) the trial court erroneously denied O'Hara's motion for a continuance, denying him the ability to obtain exculpatory evidence; and (9) his trial counsel was ineffective because (a) he failed to object to the trial judge's ex parte communication with a juror, and (b) he failed to object to the prosecutor's improper comments during closing arguments.

### 1.       *Waiver*

On appeal O'Hara does not challenge the district court's conclusion that the following six claims are procedurally defaulted: (1) the trial court denied the jury's request to rehear certain testimony; (2) the trial judge engaged in an ex parte communication with a juror; (3) Hicks was improperly sequestered throughout the trial; (4) the prosecution used improper impeachment evidence and made improper statements during closing arguments; (5) the trial court erred in denying O'Hara's motion for a continuance; and (6) O'Hara's counsel was ineffective. The district court also held that O'Hara's *Murnahan* application, in which he raised an ineffective-assistance-of-appellate-counsel claim was also procedurally defaulted.

Because O'Hara fails to contest the district court's procedural-default rulings as to the foregoing claims, he has waived any such arguments. *Boyd v. Ford Motor Co.*, 948 F.2d 283, 284

(6th Cir. 1991) (concluding that because plaintiffs did not challenge a district court's ruling on a particular issue, any arguments "pertaining to that ruling are considered abandoned on appeal and thus not reviewable"); *Robinson v. Ohio Dep't of Dev.*, 69 F. App'x 204, 205 (6th Cir. 2003) (order) (explaining that because "Robinson does not argue that the district court erred by holding that his action was barred by res judicata and/or collateral estoppel," he has waived this issue on appeal). We now turn to O'Hara's claims that are not procedurally defaulted.

### 2.     *Sufficiency of the Evidence*

O'Hara argues that "no credible evidence sufficient to establish guilt beyond a reasonable doubt was ever presented. Although Maureen Hicks testified that she was abducted and sexually assaulted, neither physical evidence nor the testimony of other witnesses supported [her] version of the events." (Appellant's Br. 15.) Conversely, the State argues that "overwhelming evidence was adduced as to O'Hara's guilt." (Appellee's Br. 29.)

The Ohio Court of Appeals, on direct review, was the only Ohio court to address the merits of this claim:

> Obviously the jury in this case was presented with two vastly different versions of the truth. While O'Hara disparages Hicks's testimony as incredible, it is his version of events that requires the willing suspension of disbelief. To accept O'Hara's version, the jury would have had to accept that Hicks had engaged in an adulterous relationship with a stranger who had approached her out of the blue in a Wal Mart store; that O'Hara had never learned her last name in the course of their entire intimate relationship, or become aware of a distinctive tattoo on her ankle; and that Hicks, outraged at the sexually perverse behavior of O'Hara's brother (who did not testify), had concocted on the drive home from his apartment an elaborate scheme to falsely charge him with rape that would involve the police and eventually expose their illicit relationship to her husband in a court of law. The jury here would have also had to overlook the fact that O'Hara had initially given a different story to the police when he was arrested, claiming that he had had oral sex with Hicks, and that he had not known why she would falsely charge him with rape and kidnapping. In sum, even sitting as a thirteenth juror, we find no basis to disagree with the twelve in this case that the person engaging in an extraordinarily malicious fiction was O'Hara, not Hicks.

*O'Hara*, 2001 WL 725410, at *7.

The magistrate judge concluded that "upon viewing the evidence in the light most favorable to the prosecution, . . . any rational trier of fact could have found beyond a reasonable doubt that [O'Hara] was guilty of kidnapping and raping the victim." (Mag. J. Report 22.) The magistrate judge explained that Hicks's testimony at trial, identifying O'Hara as the individual that abducted and raped her, "was sufficient in and of itself to establish [O'Hara's] guilt beyond a reasonable doubt on the kidnapping and rape charges in this case." (*Id.* 21.) Although O'Hara argued that Hicks was not a credible witness, the magistrate judge noted that O'Hara himself did not present a "credible defense, which a reasonable juror could have determined outweighed the relatively minor inconsistencies cited by [O'Hara] regarding the victim's version of events." (*Id.*)

Under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), in addressing a sufficiency-of-the-evidence claim we look to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* makes clear that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not

affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. "The state need not rule out every hypothesis except that of guilt beyond a reasonable doubt, and the reviewing court need not be convinced of petitioner's guilt beyond a reasonable doubt." *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

O'Hara argues that Hicks's version of events "not only lacked credibility, it was simply bizarre." (Appellant's Br. 15.) On appeal, however, it is not for us to judge the credibility of Hicks's testimony; the jury could reasonably have believed Hicks's testimony while discrediting O'Hara's. *See Walker*, 57 F.3d at 475-76 (explaining that the jury's disbelief of a witnesses's testimony was reasonable and that "[i]t is not for this Court to weigh the credibility of the witnesses"). It is the jury's responsibility to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Although O'Hara argues that Hicks's version of events was not corroborated by other witnesses or by physical evidence, "[a] jury's verdict 'may be based entirely on circumstantial evidence.'" *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995)); *see also United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) ("'Circumstantial evidence alone is sufficient to sustain a conviction . . . .'") (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not 'remove every reasonable hypothesis except that of guilt'") (quoting *United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991) (per curiam)). Hicks testified that O'Hara abducted her and forcibly raped her by performing oral sex on her. (Mag. J. Report 21.) This testimony was sufficient to establish each element of the rape and kidnapping charges against O'Hara. *See, e.g.*, *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (stating that "the testimony of a rape victim alone is sufficient to support a defendant's conviction"). In light of the deference given to a jury's verdict under *Jackson*, the Ohio Court of Appeals did not err in concluding that O'Hara's conviction was supported by sufficient evidence.

3.       *Prosecution's Failure to Disclose Exculpatory Information*

O'Hara claims that his Fourteenth Amendment right to a fair trial was violated when the prosecution withheld Hicks's written statement to a Colerain Township police officer made immediately after the incident—evidence which O'Hara claims is material and exculpatory under *Brady v. Maryland*, 373 U.S. 83 (1963).

The Ohio Court of Appeals addressed this claim on direct review:

> According to O'Hara, the statement was favorable to the defense because in it Hicks had placed the time of the offenses at 1:45 p.m. and had never claimed that O'Hara actually had a gun.

> The existence of the written statement was revealed during Hicks's testimony. Defense counsel, after Hicks had completed her testimony, moved to have the statement examined under Crim. R. 16(B)(g). That section provides, upon request of the defendant, for an in camera inspection of a witness's statement by the court, with the attorneys participating, to determine the existence of any inconsistencies between the statement and the trial testimony. The trial court here conducted such an inquiry. Although the court did not find any inconsistencies, defense counsel felt that the 1:45 p.m. time given to the Colerain police was sufficiently inconsistent with Hicks's earlier testimony to warrant recalling Hicks for

further cross-examination. The court stated that it would allow the defense to recall Hicks for the purpose of questioning her about any perceived discrepancy. But when Hicks was later recalled by the state as a rebuttal witness on an unrelated matter, defense counsel chose not to question her about the time of the offenses. And at no time did counsel suggest that there was any inconsistency between Hicks's testimony and her prior statement in which she had never claimed that O'Hara actually possessed a weapon.

*O'Hara*, 2001 WL 725410, at * 4. The court discussed the merits of O'Hara's *Brady* claim, after outlining the requirements for establishing such a claim:

> The state argues that there were no discrepancies in Hicks's statements, let alone material ones. The state points out, in this regard, that Hicks merely testified that she had gone to the La-Z-Boy store at 12:30 p.m., and that, taking into account all that had transpired later, she was probably raped at very close to 1:45 p.m. The state also argues that there was no discrepancy between her testimony that O'Hara had acted as if he had a gun by sticking his hand into his coat pocket, and her earlier statement in which she had made no claim that he actually had a gun.
>
> We agree with the state that whatever slight difference there was between Hicks's testimony and her earlier statement was not material, and certainly was not sufficient to undermine confidence in the verdict reached by the jury. Moreover, we disagree with O'Hara that the prosecution "suppressed" the statement. The statement was appropriately produced pursuant to the procedure set forth in Crim. R. 16(B)(g). Although O'Hara argues that, because the statement was not disclosed prior to trial, he was deprived of the opportunity to effectively cross-examine Hicks, this argument ignores the fact that the trial court expressly granted defense counsel leave to recall Hicks and to inquire about the alleged time discrepancy. Counsel did not take advantage of this opportunity.
>
> Further, although O'Hara cites this court's decision in *State v. Henderson* (June 9, 2000), Hamilton App. No. C 990657, unreported, as support for his position, he overlooks a very important difference between that case and this. In *Henderson*, the trial had concluded and the defendant had been found guilty before defense counsel discovered exculpatory evidence in police files. Here, the trial was still in progress. Had defense counsel felt prejudiced by the lack of earlier disclosure, she had the option of requesting a continuance. The fact that she did not defeats a claim of prejudice. As the Ohio Supreme Court held in *State v. Edwards* (1976), 49 Ohio St.2d 31, 42-43, 358 N.E.2d 1051, 1059 1060, a defendant cannot claim prejudice on the basis of surprise by the revelation, during trial, of nondisclosed evidence, when the defendant fails to move for a continuance at the time of the objection.

*Id.* at *4-5.

The magistrate judge concluded that O'Hara's claim was meritless: "*Brady* does not apply to the case-at-hand, which involves at most the tardy disclosure of the victim's prior written statement during trial, made in time for 'full and adequate correction' and where no showing has been made of any prejudice to petitioner by the delay in disclosure." (Mag. J. Report 28.) The magistarte judge determined that O'Hara failed to show that the State improperly withheld Hicks's prior written statement because it was disclosed during the trial. Further, even if the statement should have been disclosed prior to trial, O'Hara "has not demonstrated that 'there is a reasonable probability that . . . the result of the [trial] would have been different.'" (*Id.* 29 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985).) In addition, even assuming that the discrepancy in

Hicks's testimony constituted favorable evidence for the defense, explained the magistrate judge, the Ohio Court of Appeals reasonably concluded that the evidence was not material.

O'Hara raised this claim in his brief on direct review to the Ohio Court of Appeals. (JA 117, 126-129.) O'Hara also raised this claim to the Ohio Supreme Court on direct review. (JA 296, 303-06.) The district court concluded that this claim was not procedurally defaulted, Mag. J. Report 22, and we agree.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The duty to disclose *Brady* evidence encompasses impeachment evidence as well as exculpatory evidence. *Bagley*, 473 U.S. at 676; *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998). We explained in *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994), that "[m]ateriality pertains to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial." *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 112 n.20 (1976)). In particular, "[e]vidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)). Further, reversal is not always warranted when a *Brady* violation occurs: "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to complete failure to disclose." *Bencs*, 28 F.3d at 560. "Delay . . . violates *Brady* [only] when the delay itself causes prejudice." *United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir. 1992). In sum, there are three components to a *Brady* violation, all of which O'Hara must establish to succeed on habeas review: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The evidence at issue here is impeachment evidence because O'Hara's counsel could have used Hicks's prior written statement—that the offense occurred at 1:45 p.m.—to impeach Hicks's testimony at trial that the offense occurred between 12:45 p.m. and 1:10 p.m. Therefore, the first element of a *Brady* violation is satisfied.

Defense counsel requested that the prosecution turn over all oral and written statements by Hicks and the prosecution responded that it had no written statements from Hicks. Although the prosecution may not have been aware of Hicks's statement to the Colerain Township police officer, the "prosecutor has a duty to learn of any favorable evidence known to . . . others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *see also Strickler*, 527 U.S. at 280-81 (explaining that "evidence known only to police investigators and not to the prosecutor" is encompassed by the *Brady* rule) (internal quotation marks omitted). Further, even unintentional suppression of exculpatory evidence by the prosecution will suffice to establish a *Brady* violation. *Strickler*, 527 U.S. at 282. Thus, the second element of a *Brady* claim is satisfied.

O'Hara, however, is unable to show that he was prejudiced from the prosecution's delayed disclosure of Hicks's prior written statement (the third element of a *Brady* claim). To establish prejudice, O'Hara must show that Hicks's prior written statement—the evidence the prosecution delayed in disclosing—was material. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

After the trial court compared Hicks's written statement with her trial testimony and concluded that there were no inconsistencies, O'Hara's counsel was nonetheless given the opportunity "to recall Hicks for the purpose of questioning her about any perceived discrepancy." *O'Hara*, 2001 WL 725410, at *4. For reasons unknown, O'Hara's counsel did not take advantage of this opportunity. In *Bencs*, we explained that delayed disclosure does not violate *Brady* unless the "delay itself causes prejudice." 28 F.3d at 561 (quoting *Patrick*, 965 F.2d at 1400). It is not clear how O'Hara was prejudiced by the delayed disclosure of Hicks's written statement, given the trial court's willingness to allow O'Hara's counsel to question Hicks about the written statement and his counsel's failure to do so.

O'Hara now argues that he was prejudiced because his counsel did not have enough "time to prepare a defense, to discuss potential evidence with [O'Hara], and to subpoena supporting evidence for presentation of the defense case." (Appellant's Br. 20.) O'Hara, however, did not request a continuance when the evidence of Hicks's written statement was disclosed and, further, he does not explain how earlier disclosure of this information might have changed the outcome of the proceedings. Although O'Hara claims that the evidence had a bearing on Hicks's credibility, there is only a difference of thirty-five minutes to one hour between the time Hicks told the officer the offense occurred and the time she testified to at trial. The Ohio Court of Appeals concluded that at best this single inconsistency was minor. *O'Hara*, 2001 WL 725410, at *5. Additionally, O'Hara's counsel admitted that the only inconsistency in Hicks's testimony was the one regarding the time of the incident. (Mag. J. Report 23 n.3 ("[D]efense counsel expressly acknowledged that '[t]here was nothing else, your Honor, that I saw [in the statement] that I thought was a major inconsistency.'") (quoting Trial Transcript "Tr." 667).) O'Hara has not demonstrated that the evidence was material and that its tardy disclosure was prejudicial. Because O'Hara is unable to establish the third element of a *Brady* claim, O'Hara is not entitled to habeas relief on this claim.

### 4. *Ineffective Assistance of Trial Counsel*[1]

O'Hara raised this ineffective-assistance-of-counsel claim in his counsel's brief to the Ohio Court of Appeals and the Ohio Supreme Court on direct review. O'Hara argued that his counsel was ineffective because (1) counsel improperly withdrew a motion to suppress O'Hara's inculpatory, taped statements to police; and (2) counsel failed to object to the court's failure to read back to the jury the testimony it requested.

On direct review, the Ohio Court of Appeals explained that

[i]n support of the first of these alleged deficiencies, O'Hara merely states that his inculpatory statements to the police were produced by coercion. He does not elaborate further by identifying in what manner the statements were coerced. Presumably this argument is in reference to his claim that the detective who took his statements had promised to drop the kidnapping charge in exchange for his false admission to having engaged in oral sex with Hicks. A tape of the interview, however, does not reveal such a promise. The detective testified that he had not initially charged O'Hara with anything other than rape, because he wanted the grand jury to determine any additional charges.

---

[1] O'Hara raises two ineffective-assistance-of-counsel claims, one of which was addressed in our waiver discussion, and the other is addressed in this section. This ineffective-assistance-of-counsel claim is not procedurally defaulted and we therefore reach the merits. The district court concluded that O'Hara's other ineffective-assistance-of-counsel is procedurally defaulted, and because O'Hara does not challenge that conclusion on appeal, we decline to reach the merits of the district court's conclusion.

We cannot say that defense counsel's failure to pursue a motion to suppress, based upon the bare allegation that O'Hara's will was overborne by an unsubstantiated promise of leniency, fell below an objective standard of representation. In order to conclude that the failure to pursue such a motion was prejudicial, we would have to assume that there was a probability of success in suppressing the statements. We find no basis to make such an assumption, given O'Hara's obvious lack of credibility.

With regard to the second alleged deficiency, our discussion under the third assignment of error suffices to establish that defense counsel did not violate an essential duty owed to her client.

*O'Hara*, 2001 WL 725410, at *7-8 (internal citations omitted).

The magistrate judge concluded that "[t]his claim was exhausted on direct appeal in the state courts, and is subject to review on the merits," Mag. J. Report 30, and we agree. The district court held that the Ohio Court of Appeals properly denied O'Hara's ineffective-assistance-of-trial-counsel claim. In addressing O'Hara's claim that his counsel erred because she failed to object to the court's response to the jury's questions, the magistrate judge noted that the trial court's instructions did not deny the jury's request for testimony but rather asked the jury to consider whether its request for testimony was still necessary in light of the court's answers to its questions. (*Id.* 32.) The magistrate judge explained that "[i]t did not fall outside the wide range of reasonable professional assistance for petitioner's trial counsel to agree to such a procedure, which in itself did not amount to error and indeed constituted an appropriate response by the trial court to the jury's questions." (*Id.*)

As to O'Hara's claim that his counsel erred in withdrawing the motion to suppress, the magistrate judge noted that "there is no evidence in the record even remotely suggesting that petitioner's statements to the police were coerced or otherwise involuntarily obtained." (*Id.*) The magistrate judge explained that

[o]n review of the transcript of the challenged interview submitted by petitioner as an exhibit attached to his petition, it appears that before any statement was taken by the police, petitioner was advised of his Miranda rights and stated that he understood and waived those rights. In the interview, petitioner gave his "side of the story," which was inculpatory only to the extent that it was inconsistent with his later trial testimony . . . . [G]iven petitioner's position that he and the victim knew each other and were sexually intimate, the Court gives little credence to any claim that the police coerced a "false" admission from petitioner of having engaged in oral sex with the victim on December 27, 1999.

(*Id.* 32-33 (internal citations omitted).)

O'Hara claims that his taped statement was coerced because Detective Hinrichs promised him, in exchange for the statement, that he would be charged only with rape. (Appellant's Br. 28.) O'Hara contends that he "was prejudiced by the admission of the statement, because it contained an untrue admission of sexual contact that was not supported by other, independent evidence, forcing him to testify and expose his criminal record to the jury." (*Id.* 29.) Second, O'Hara argues that his counsel's failure to object to the judge's response to the jury's request was clear error because "the U.S. Supreme Court has mandated prompt and accurate response to inquiries and the questions related to vital portions of the conflicting testimony." (*Id.* 30.)

The Supreme Court, in *Strickland v. Washignton*, 466 U.S. 668, 687 (1984), created a two-prong test that O'Hara must satisfy to establish a Sixth Amendment violation: (1) "the defendant

must show that counsel's performance was deficient," and (2) "the defendant must show that the deficient performance prejudiced the defense." To establish that his counsel's performance was deficient, O'Hara "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The Supreme Court has explained that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* Further, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . ."). To satisfy the prejudice prong, O'Hara "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The district court did not err in denying O'Hara relief on this claim. As the Ohio Court of Appeals noted, there is no evidence in the record to suggest that O'Hara's statement to the police was coerced. O'Hara does not point to evidence in the record supporting his claim of coercion; he merely offers his own unsubstantiated statements that he made the taped statement to police because they promised to charge him only with rape. Further, the magistrate judge noted that before O'Hara gave his statement, he properly waived his *Miranda* rights. (Mag. J. Report 32.) Thus, without evidence that O'Hara's statement was coerced, his counsel could not have been ineffective for withdrawing his motion to suppress the statement.

Additionally, the Ohio Court of Appeals correctly concluded that O'Hara's counsel was not ineffective for failing to object to the trial court's response to the jury's request for testimony. Applying plain-error review, the court concluded that the trial court's response did not deny the jury its request to rehear testimony. *O'Hara*, 2001 WL 725410, at *6 ("The trial court manifestly did not deny the jury's request for testimony, but only cautioned that such a request would take some time and that the jury should fully consider the request and submit it in writing."). The court asked the jury to consider whether its request was still necessary in light of the court's answers to its other questions, and if necessary, to renew the request in writing. *O'Hara*, 2001 WL 725410, at *5-6. The trial court's response indicates, not that it denied the jury's request to rehear testimony, but merely that it asked the jury to consider whether it still wanted to rehear the testimony in light of the answers provided to its other questions. O'Hara has therefore failed to show that his trial counsel erred in not objecting to the court's response. Without first establishing that his counsel was deficient, O'Hara cannot succeed on his ineffective-assistance-of-counsel claim. O'Hara's ineffective-assistance-of-trial-counsel claim is therefore meritless.

## III.

For the reasons discussed, we **AFFIRM** the judgment of the district court denying O'Hara's petition for issuance of a writ of habeas corpus.