NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0528n.06
Filed: August 27, 2008

No. 07-3542

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| DONNA GEMBUS, | ) | |
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| METROHEALTH SYSTEM, | ) | |
| Defendant-Appellee. | ) | |

Before: NORRIS, BATCHELDER, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge**. Defendant-appellee MetroHealth Medical Center ("MetroHealth") terminated its employee plaintiff-appellant Donna Gembus, who had taken a leave pursuant to the Family and Medical Leave Act. The district court granted summary judgment in favor of MetroHealth and Gembus appealed. For the reasons set forth below, we affirm the district court's grant of summary judgment in favor of MetroHealth.

I.

MetroHealth hired Donna Gembus as a medical assistant in the dialysis department in June 1990. At the time she was hired, Gembus received a MetroHealth Employee Handbook, which includes attendance standards and family and medical leave policies. The attendance policy states "[e]mployees are tardy when they are not at their assigned work station at the start of their shift as

defined by the employee's supervisor." An employee receives one tardy point each time he or she is late; tardiness is calculated for twelve months and after twelve months, tardy points disappear. Within a twelve month period, three tardy points results in a "record of discussion," five points leads to a verbal warning, ten points leads to a written warning, fifteen points results in a final written warning, and twenty points means the employee is subject to termination.

Gembus transferred, at her request, to a liaison specialist position in 2001. Liaison specialists answer incoming telephone calls and assist callers with multiple tasks, including setting up appointments, referring MetroHealth patients and non-patients to clinics, maintaining physicians' schedules and a reference guide for nurses in the department, and directing pharmacists to the appropriate physician. The liaison specialist position required Gembus to work rotating shifts, including working both day and night shifts and working a combination of weekdays and weekends.

The Line Department, where Gembus worked, had a work schedule that required employees to log into a telephone sign-in system five minutes before their scheduled shift time and allowed them to log out ten minutes before the end of the shift, with half of the ten-minute period used to clean their desks. Gembus was aware of and understood the early sign-in requirement that became effective in September 2002. Although employees were not compensated for the five-minute period before their shift started, they were considered late if they did not arrive prior to the five-minute window.

Gembus accrued thirteen tardiness points and received a written warning before her 2001 transfer to liaison specialist. In July 2001, Gembus accumulated twenty-three points but instead of terminating her, MetroHealth gave Gembus a one-day suspension for tardiness and for falsification of a sign-in sheet. Gembus received additional verbal and written warnings, including a verbal

2

warning on July 22, 2002, a written warning on September 29, 2002, a final written warning on November 1, 2002, a final written warning on November 27, 2003, a final written warning on October 15, 2004, and a final written warning on May 2, 2005.[1] MetroHealth personnel discussed with Gembus her tardiness at three performance appraisals while she was a liaison specialist. She signed each appraisal, admitting the tardiness problem had been discussed.

Gembus was diagnosed with fibromyalgia, a chronic condition that causes pain in muscles and soft tissue surrounding joints, prior to 2001. In early 2005, her symptoms worsened and Gembus's physician, Dr. Michael Harrington, referred her to MetroHealth's Employee Assistance Program, where it was suggested that she take a leave of absence pursuant to the FMLA. Gembus was on leave from March 1 to April 1, 2005, for fibromyalgia and chronic fatigue syndrome.

Dr. Harrington stated in February 2005 that Gembus's fibromyalgia "requires steady day shift work without fluctuating shifts in order to manage organization of sleep and circadian rhythms." After her return from FMLA leave, Gembus asked to be placed on daytime shifts. MetroHealth initially denied the request, and her attorney made a request under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq*. Gembus testified at her deposition that she encountered hostility when she asked to work only day shifts.

---

[1]On August 14, 2002, August 26, 2002, September 25, 2002, September 28, 2002, September 29, 2002, November 1, 2002, March 25, 2003, May 24, 2003, July 3, 2003, September 2, 2003, September 10, 2003, October 6, 2003, November 17, 2003, November 26, 2003, November 27, 2003, March 16, 2004, March 23, 2004, March 30, 2004, August 7, 2004, September 7, 2004, September 19, 2004, September 28, 2004, October 15, 2004, November 24, 2004, December 5, 2004, January 1, 2005, May 11, 2005, June 3, 2005, June 8, 2005, and June 10, 2005, Gembus accrued tardy points for arriving within an unpaid five minute period of time before the scheduled shift started.

3

While MetroHealth considered her request and gathered more information, it gave Gembus daytime shifts.  Gembus received seven tardy points in April, May and June 2005, the last of which raised her accumulated point total to twenty-one.  MetroHealth conducted a pre-discharge meeting with Gembus on June 13, 2005, and terminated her the same day.

Gembus filed this action.  The district court[2] granted MetroHealth's motion for summary judgment on February 27, 2007.  It dismissed the retaliation claim under Ohio Revised Code § 4112.02 because MetroHealth presented evidence of a non-discriminatory reason for terminating Gembus, tardiness, and Gembus failed to introduce evidence from which an inference could be drawn that the explanation was pretextual.  The district court granted summary judgment on the Family and Medical Leave Act ("FMLA") claim based on the same reasoning.

II.

A.

We review a district court's decision to grant summary judgment *de novo*. *Pagan v. Fruchey*, 492 F.3d 766, 770 (6th Cir. 2007) (citation omitted).  Summary judgment may be granted only if there are no genuine issues of material fact and one party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

---

[2]The parties consented to the case being heard by United States Magistrate Judge Nancy Vecchiarelli.

Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); s*ee also* Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In reviewing a district court's decision to grant summary judgment, we view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

B.

We turn to Gembus's retaliation claim brought under the FMLA. The FMLA entitles an eligible employee to up to twelve weeks of leave during a twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

As no direct evidence of retaliation is present in this case, the court must apply the tripartite burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). "At the outset, the plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Id.* at 570 (citation and internal quotations omitted).

In order to make out a *prima facie* case, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection

5

existed between the adverse employment action and the protected activity. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

Once the plaintiff makes a *prima facie* case, the burden shifts to the defendant to introduce "evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Bryson*, 498 F.3d at 570. If the defendant introduces such evidence, "the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Id*. "Although the burdens of production shift, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (citation and quotation marks omitted).

With respect to whether Gembus has made out a *prima facie* case of retaliation, Gembus engaged in protected activity when she took a leave pursuant to the FMLA from March 1 to April 1, 2005. She suffered an adverse employment action when she was terminated on June 13, 2005. She also argues that she has shown a causal connection between her FMLA leave and her termination. Gembus stated in her deposition that she encountered hostility when she asked to work only day shifts. She argues that the proximity in time between the accommodations sought, FMLA leave and the request to work the day shift, and the termination, along with that hostility, is enough to establish the requisite causal connection. Following the approach taken by the district court, we assume, without deciding, that Gembus has established a *prima facie* case of retaliation.

The burden shifts to MetroHealth to present a "legitimate non-discriminatory" reason for Gembus's termination. *Bryson*, 498 F.3d at 570. MetroHealth met this burden by introducing evidence that it terminated Gembus for chronic tardiness. MetroHealth discharged Gembus after she accrued more than twenty tardy points in a twelve-month period.

6

The burden remains with Gembus to show that MetroHealth's reason for her termination – tardiness in violation of its policy – is a pretext. *Id*. Gembus may meet this burden by demonstrating that the proffered reason "1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (citation omitted). In order to meet her burden, Gembus must show both that MetroHealth's stated reason for her termination was false and that discrimination was MetroHealth's motivation for her discharge. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

Gembus argues that Metrohealth has not presented a non-retaliatory reason for her termination because the proffered reason, tardiness, was untrue. Gembus explains that she would not have accumulated twenty tardy points if the four shifts in May and June 2005 where she arrived during the five minute unpaid period before her shift began were not counted in this tally. Gembus's attempt to show that MetroHealth's explanation has no basis in fact fails because although Gembus was required to sign in five minutes before her shift began, she was also allowed to sign out ten minutes before a shift ended. Moreover, Gembus accrued tardy points during this five minute period both before and after her FMLA leave. In addition, Gembus did not introduce any relevant evidence showing that MetroHealth's explanation for her discharge was pretext. Furthermore, her evidence of the hostility she encountered when she requested an accommodation to work the day shift does not address MetroHealth's reason for her discharge because it does not refute the evidence that Gembus had twenty-one tardiness points in violation of MetroHealth policy, which allowed for her termination, or show that tardiness was not the reason for her termination. Gembus has failed to introduce evidence showing that either MetroHealth's stated reason for her termination was false or that retaliation was the actual reason.

7

We affirm the grant of summary judgment in favor of MetroHealth on Gembus's retaliation claim under the FMLA.

C.

We next consider Gembus's state law retaliation claim. Ohio Revised Code § 4112.02 provides, in relevant part, that it is "unlawful discriminatory practice . . . For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Ohio Rev. Code § 4112.02(I). "[T]o discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment" is also forbidden on account of disability. *Id*. § 4112.02(A).

To make a *prima facie* case of retaliation, a plaintiff must show that "(1) she engaged in a protected activity; (2) her employer knew about the protected activity; (3) her employer took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Hollingsworth v. Time Warner Cable*, 812 N.E.2d 976, 987 (Ohio Ct. App. 2004).[3] "If the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions." *Id.* (citation and quotation marks omitted). If the employer meets this burden, the plaintiff then must show that

---

[3]This is very similar to the test for retaliation under the FMLA. *Id.* Despite the similarities, we analyze the state law claim separately from the federal claim. *Id.*

the articulated reason was a pretext and not the "true reason for the employment decision." *Id.* (citation and quotation marks omitted).

Gembus argues she has made out a *prima facie* case of retaliation because she has satisfied all of the elements of a *prima facie* case, including that she has shown a causal connection between her request to work the day shift and her termination. Gembus claims MetroHealth retaliated against her because she requested a disability accommodation, to work the day shift.

Gembus contends she engaged in protected activity under Ohio law when she requested to work the day shift only as an accommodation for an alleged disability. Ohio law provides that "an employer must make reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business." Ohio Adm. Code 4112-5-08(E)(1). Ohio law states that accommodations may include job restructuring, such as modified schedules. *Id.* 4112-5-08(E)(2). Whether Gembus actually was disabled is not the query. "A plaintiff may prevail on a disability-retaliation claim even if the underlying claim of disability fails." *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007) (internal quotation marks and citation omitted).[4] Thus, Gembus argues, and MetroHealth does not dispute, that her request to work the day shift as an accommodation for her disability is a statutorily protected activity. *See id.* MetroHealth was aware Gembus requested to work the day shift only. Gembus therefore suffered an adverse employment action when she was terminated on June 13, 2005.

---

[4]Ohio's disability discrimination statute is analyzed similarly to the Americans with Disabilities Act. *Kleiber v. Honda of America Mfg, Inc.*, 485 F.3d 862, 872 (6th Cir. 2007).

9

The parties dispute whether Gembus has established a causal connection between her request to work the day shift and her termination. Gembus offers the following as evidence of the causal connection: (1) the hostility she encountered when she asked to work only day shifts and (2) the proximity in time of her request to work the day shift and her termination. Here, as with her federal retaliation claim, we assume, without deciding, that this is sufficient to establish a *prima facie* case.

MetroHealth has the burden to present a "legitimate, nondiscriminatory reason" for Gembus's termination. *Hollingsworth*, 812 N.E.2d at 987. MetroHealth met this burden by introducing evidence that it terminated Gembus for chronic tardiness because she accumulated twenty-one tardy points, more than the twenty required for termination under its stated policy.

The burden shifts to Gembus to show that MetroHealth's stated reason for her discharge is pretextual. *Id.* A plaintiff may demonstrate pretext by showing: (1) that the stated reasons for her firing had no basis in fact, (2) that the stated reasons for her firing were not the actual reasons, and (3) that the stated reasons for her firing were insufficient to motivate the discharge. *Chandler v. Dunn Hardware, Inc*, 860 N.E.2d 1042, 1048 (Ohio Ct. App. 2006). "To show pretext, the employee must prove that the employer's reason is false and that discrimination was the real reason for the adverse employment action." *Id.* at 1045.

Gembus argues that Metrohealth has not presented a non-discriminatory reason for the termination because the proffered reason, tardiness, had no basis in fact. Specifically, Gembus argues she would not have accumulated twenty tardy points at the time of her termination if Metrohealth did not count the shifts where she arrived before her scheduled shift but after the five-minute early arrival window commenced. Although she asserts no Fair Labor Standards Act claim,

10

her argument is essentially that counting the many instances on which she arrived during this window, including four after her return from FMLA leave, violates the Fair Labor Standards Act.

Gembus's argument that the tardiness policy violated law fails. MetroHealth's policy stated that employees had to log into a telephone sign-in system five minutes before their scheduled shift time but allowed them to log out ten minutes before the end of the shift, with half of that time used to clean their desks. Because Gembus was permitted to recoup the time she was required to work without compensation at the end of her shift, she was compensated for the full time she worked. Therefore, MetroHealth's policy does not violate the Fair Labor Standards Act.

In addition, Gembus has not introduced evidence that she was terminated for retaliatory reasons. When the employer offers a "legitimate nondiscriminatory reason" for its action, "the presumption of intentional discrimination disappears, but the plaintiff can still prove [retaliation] by, for instance, offering evidence demonstrating that the employer's explanation is pretextual." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003). Her evidence of temporal proximity alone is insufficient to meet this burden because it does not address MetroHealth's explanation for her termination, tardiness. Furthermore, her evidence of the hostility she encountered when she requested an accommodation to work the day shift does not address MetroHealth's reason for her discharge because it does not rebut the uncontradicted evidence that Gembus accumulated twenty-one tardiness points in violation of MetroHealth policy, which allowed for her termination. In addition to failing to prove that MetroHealth's proffered reason for her termination was false, Gembus also failed to introduce evidence that the real reason for her discharge was retaliation rather than tardiness. To the extent Gembus argues that she was retaliated against because she received tardies during the five-minute uncompensated period after she returned from FMLA leave but not

11

before her leave, her argument is belied by her tardiness record, which shows that she accumulated tardy points during the five-minute period both before and after she took FMLA leave.

We affirm the district court's grant of summary judgment in favor of MetroHealth on the retaliation claim under Ohio law.

## D.

The district court granted summary judgment in favor of MetroHealth on Gembus's termination in violation of public policy claim, holding that the claim was precluded because it could only be brought when there was no civil remedy provided by a statute. It also concluded that state and federal laws provided sufficient civil remedies. Gembus failed to raise this claim on appeal and has abandoned it. *See, e.g.*, *O'Hara v. Brigano*, 499 F.3d 492, 498 (6th Cir. 2007) ("Because O'Hara fails to contest the district court's procedural-default rulings as to the foregoing claims, he has waived any such arguments."); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991) (stating that issues litigated in the district court but not raised on appeal are considered abandoned on appeal and are not reviewable).

## E.

The district court granted summary judgment in favor of MetroHealth on Gembus's claim for failure to accommodate under Ohio Revised Code § 4112.02. It concluded that Gembus had not met her burden of showing that she was disabled pursuant to § 4112.02. Gembus has abandoned this claim by failing to raise it on appeal. *See, e.g.*, *O'Hara*, 499 F.3d at 498.

## III.

For the foregoing reasons, we affirm the judgment of the district court.