**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Thomas TERRY, Defendant-Appellant.**

**No. 16768.**

United States Court of Appeals
Sixth Circuit.

July 6, 1966.

Sheldon M. Meizlish (Court Appointed), Detroit, Mich., for appellant.

Patricia J. Pernick, Asst. U. S. Atty., Detroit, Mich., Lawrence Gubow, U. S. Atty., Detroit, Mich., on brief, for appellee.

Before PHILLIPS, Circuit Judge, CECIL, Senior Circuit Judge, and MATHES,* Senior District Judge.

CECIL, Senior Circuit Judge.

This cause is an appeal from a judgment of conviction of the defendant-appellant, John Thomas Terry, in the United States District Court for the Eastern District of Michigan, Southern Division. John Thomas Terry, defendant-appellant, hereinafter referred to as defendant, was charged in an indictment: that on or about July 29, 1963, he knowingly transported in interstate commerce, from Chattanooga, Tennessee, to Detroit, Michigan, by automobile, one Mardean Teague for the purpose of prostitution, debauchery and other immoral purposes, in violation of Section 2421,[1] Title 18, U.S.C. Judgment was entered upon a verdict of guilty by a jury and the defendant was sentenced to imprisonment for three years.

One of the assignments of error is that the evidence is insufficient to sustain the conviction. According to the undisputed testimony in the record, the defendant and two of his friends met Mardean Teague and some of her friends in Chattanooga, Tennessee, on Sunday, July 29, 1963. After visiting an "after hour" place and a beer tavern where they did some drinking they rode around for about an hour. The defendant and Mardean, with some of their friends, then went to the home of Billy Bonds, a friend of the defendant. Here the defendant and Mardean spent the night together. The next day, Monday, July 30th, the defendant, his two friends, Lorenzo and Miles, and Mardean and Maggie Williams left Chattanooga in the defendant's automobile for Detroit about two o'clock in the afternoon.

The party arrived in Detroit on Tuesday morning, July 31st about 4 A.M. In Detroit, they took Lorenzo home and then the other two couples went to the defendant's apartment at 98 Winder. Mardean lived at this apartment for about two months, during her entire stay in Detroit. During Mardean's first day in Detroit the defendant took her to a department store and bought her some clothing. This clothing was such that the jury might well infer that it was to equip her for entrance into her new profession of prostitution.

The defendant introduced Mardean to Irma Jean Smith, his "wife-in-law," (a woman who shares her man with another woman). Irma instructed her in the art of prostitution which she practiced in Detroit from the second night of her arrival until she returned to her home in Chattanooga.

---

* William C. Mathes, Senior District Judge of the Southern District of California, sitting by designation.

1. "Whoever knowingly transports in interstate * * * commerce, * * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, * * *
  "Shall be fined not more than $5,000. or imprisoned not more than five years or both."

■ The basis of the defendant's claim that the evidence is insufficient to sustain a conviction is that it fails to show that he had a purpose before arriving in Detroit of having Mardean engage in prostitution. This claim is untenable. The trial judge correctly instructed the jury on intent and purpose:

"Intent or motivation need not be proved by direct evidence. The necessary intent or purpose on the part of a defendant in a prosecution for violation of this statute may be proved by circumstantial evidence, and as bearing upon this essential element of the offense, the conduct of the parties within a reasonable time before and a reasonable time after the transportation may be taken into consideration by you.

"Intent, as I have already stated, is a state of mind with which an act is done. It is the mental process or the design, the aim, the purpose, or the object of the act. The intent which accompanies the commission of an act is purely a mental process, and as such, is rarely capable of being proved by direct evidence, and therefore may be inferred from outward manifestations or conditions or acts of the defendant, or other facts and circumstances surrounding the commission of an act or acts."

One cannot read the record in this case without concluding from all the facts and circumstances that the defendant's purpose in taking Mardean to Detroit was to have her engage in prostitution. Mardean testified that the defendant talked to her about prostitution in Detroit before she left Chattanooga. There was ample testimony before the Court from which the jury could draw a legitimate inference that the defendant intended to have Mardean engage in prostitution in Detroit before they left Chattanooga.

■ The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty. Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442; Wegman v. United States, 272 F.2d 31, 33, C.A.8.

■ Another assignment of error is that the trial judge refused to instruct the jury as to defendant's theory of the case. The trial judge refused to give an instruction [2] which was submitted in writing before arguments to the jury. (Rule 30, F.R.Cr.P.) This requested instruction unduly emphasized a piece of evidence which defendant's counsel considered favorable to defendant. Blauner v. United States, 293 F.2d 723, 737–738, C.A.8, cert. den. 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed.2d 193; United States v. Pannell, 178 F.2d 98, 99, C.A.3. The trial judge gave a very fair and adequate instruction on credibility of witnesses and the theory of the defense. Chargois v. United States, 267 F.2d 410, 412, C.A.9. He is not required to give an instruction in the exact language submitted by counsel. Sugarman v. United States, 249 U.S. 182, 185, 39 S.Ct. 191, 63 L.Ed. 550; Holt v. United States, 218 U.S. 245, 253, 31 S.Ct. 2, 54 L.Ed. 1021; Davis v. United States, 226 F.2d 331, 336, C.A.6, cert. den. 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838, rehearing den. 351 U.S. 915, 76 S.Ct. 693, 100 L.Ed. 1449; Henderson v. United States, 218 F.2d 14, 18, 50 A.L.R.2d 754, C.A.6, cert. den. 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 rehearing den. 349 U.S. 969, 75 S.Ct. 879, 99 L.Ed. 1290. There is no merit to this claim of error.

■ The defense further claims that government counsel were guilty of misconduct, prejudicial to the defendant, in calling witness Irma Jean Smith when they knew that she would claim privilege

---

2. "You are further instructed that you may discount the testimony of any witness who has a personal motive in giving his or her testimony. In this case the defendant claims that MARDEAN TEAGUE'S principal motives in giving testimony and statements against him were the desire to obtain revenge and/or fear of what her parents would do should they ever become aware of the fact that she was brought to Detroit, Michigan solely because of her own wishes and desires. If you believe that this is true, then you may discount or even disregard in its entirety, Mardean Teague's testimony" (13A).

against self incrimination under the Fifth Amendment to the Constitution of the United States.

Counsel for the defendant told the court that he had been advised by the witness that she would "take the Fifth Amendment" if she were called to testify. He requested the court to conduct a separate hearing outside of the presence of the jury and to have the government make a record on the questions its counsel intended to ask. A hearing was conducted out of the presence of the jury but the government was not required to make a record of the questions it expected to ask the witness. The trial judge determined that the witness was a pertinent one to the government's case and that he could not pass on a claim of self incrimination until a specific question was propounded and the privilege was invoked. United States v. Harmon, 339 F.2d 354, 359, C.A.6, cert. den. 380 U.S. 944, 85 S.Ct. 1025, 13 L.Ed.2d 963, rehearing den. 380 U.S. 989, 85 S.Ct. 1330, 14 L.Ed.2d 282; Marcello v. United States, 196 F.2d 437, 441, C.A.5; Maffie v. United States, 209 F.2d 225, 229, C.A.1.

•Irma Jean Smith was sworn and examined as a witness in the presence of the jury. She answered a number of questions, pertinent to the government's case, without objection. She refused to answer the question, "Did you ever give any money to John Terry?" on the ground that her answer might incriminate her. This is one of the questions the witness told the court in the separate hearing that she was afraid might be asked her and that her answer might incriminate her. The trial judge was in doubt as to whether any criminal prosecution, either state or federal, could be based on her answer, but, out of an abundance of precaution, sustained the privilege and did not require her to answer. We entertain the same doubt as to whether the witness' answer to this question could possibly have incriminated her. However, on the basis that a wide discretion should be allowed the witness in determining for herself the matter of self incrimination, we think the trial judge was correct in sustaining the privilege. The jury was adequately and properly instructed on the right of a witness to refuse to answer a question on the ground of self incrimination. It was also instructed that no inferences should be drawn as to what the answer might have been. It has been held that an error in this respect may be cured by a cautionary instruction. United States v. Hiss, 185 F.2d 822, 831-832, C.A.2, cert. den. 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683; Weinbaum v. United States, 184 F.2d 330, 331, C.A.9.

We are of the opinion that counsel for the government were not guilty of misconduct in asking the question and that the court committed no error in respect to its rulings on the subject. Neither were any substantial rights of the defendant affected. Rule 52(a) F.R.Cr.P. Counsel for the defendant made other claims of misconduct against counsel for the government but we find them to be without merit considered either separately or collectively.

The judgment of the District Court is affirmed.