RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0334p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RAYMOND TUCKER,

>    *Petitioner-Appellee,*

*v.*

>    No. 07-1408

CARMEN PALMER,

>    *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-10250—Lawrence P. Zatkoff, District Judge.

Argued: June 12, 2008

Decided and Filed: September 4, 2008

Before: KEITH and SUTTON, Circuit Judges; ACKERMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Laura A. Cook, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. J. Philip Calabrese, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Laura A. Cook, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. J. Philip Calabrese, Howard J.C. Nicols, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio, for Appellee.

ACKERMAN, D. J., delivered the opinion of the court, in which SUTTON, J., joined. KEITH, J. (pp. 9-17), delivered a separate dissenting opinion.

---

## OPINION

---

ACKERMAN, District Judge. This case involves the conviction of a man for second-degree home invasion based exclusively upon the testimony of the homeowner, who saw the defendant climbing over the back yard fence and running away from the house. Here, we face the sobering issue of whether a man was unconstitutionally deprived of his liberty. We recognize that such an issue should never be addressed lightly, and so we have endeavored to carefully and thoroughly review, with the appropriate level of deference, the evidence adduced at trial. Having engaged in

---

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

1

such review, we conclude that the state court conviction of Raymond Tucker for second-degree home invasion is supported by sufficient evidence, albeit circumstantial. For the following reasons, we will reverse the District Court's grant of Tucker's habeas petition.

## I.

At trial, the prosecution's only witness, Nicholas Sutliff, testified to the following facts. On August 18, 2003, Sutliff was mowing his yard in Dearborn Heights, Michigan when he saw a man jump over a low fence out of Sutliff's back yard and into Sutliff's side yard where Sutliff was located. Sutliff recognized the man as Defendant Raymond Tucker, someone with whom he was familiar because Tucker's family lived next door to Sutliff.[1] After clearing the fence, Tucker ran in Sutliff's general direction and passed within six feet of Sutliff, at which point the two men made eye contact before Tucker continued running without exchanging a word with Sutliff.

After this incident, Sutliff went into his back yard, and as he approached his back door, noticed that it was ajar. This fact is significant because Sutliff remembered having locked the front door, and closed, but not locked, the back door. He remembers having closed the door completely because his air conditioning was on in the house. Sutliff entered his house, did not notice anything unusual, then left his house to ask his neighbors if they had seen Tucker that day. After returning to his house, Sutliff noticed that his dresser drawer was open where previously it had been closed. In addition, Sutliff noticed that where he had left two rings and a watch on top of the dresser, only the watch remained.

Police arrested Tucker on September 24, 2003 in connection with the incident at Sutliff's home. Tucker refused to answer the court's questions at arraignment, and consequently the court entered a plea of not guilty on Tucker's behalf. On February 3, 2004, after signing and filing a waiver of trial by jury, Tucker was tried in a bench trial, and convicted of second-degree home invasion, in violation of Michigan Comp. Laws § 750.110a(3). On February 26, 2004, the trial judge sentenced Tucker to 7 to 15 years imprisonment.

After his conviction in this case, Tucker filed an appeal with the Michigan Court of Appeals, which issued a summary order on May 13, 2005 denying his appeal: "The Court orders that the application for leave to file a delayed appeal is DENIED for lack of merit in the grounds presented." (JA at 95.) On November 29, 2005, the Michigan Supreme Court similarly denied Tucker's appeal: "On order of the Court, the application for leave to appeal the May 13, 2005 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court." (JA at 96.)

On January 19, 2006, Tucker filed his federal habeas petition in the Eastern District of Michigan. On December 15, 2006, Magistrate Judge Paul J. Komives issued a Report and Recommendation ("R&R"), in which he recommended that the District Court grant Tucker's petition for habeas relief on the grounds that there was insufficient evidence for the trial court to conclude that Tucker entered Sutliff's home. (JA at 97.) Relatedly, the R&R recommended that the District Court find that the state trial court's conviction of Tucker "involved an unreasonable application of clearly established federal law." (JA at 108.) On March 22, 2007, District Judge Lawrence P. Zatkoff adopted the Magistrate Judge's R&R, entered it as "the findings and conclusions of this Court," and concomitantly granted Tucker's petition for a writ of habeas corpus. *Tucker v. Palmer*, No. 06-10250, 2007 WL 869164, at *1 (E.D. Mich. Mar. 22, 2007). Subsequently, on April 16, 2007, the District Court granted the Michigan Attorney General's request to stay the release of Tucker pending the outcome of this appeal. He remains in custody today.

---

[1] Apparently, Tucker used to live in the same neighborhood as Sutliff, but had moved out many years before the 2003 incident.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 2254. The District Court's March 22, 2007 Opinion & Order, adopting the Magistrate Judge's R&R, constitutes a final order such that this Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II.

We review *de novo* a district court's decision to grant or deny habeas corpus relief. *Parker v. Renico*, 506 F.3d 444, 447 (6th Cir. 2007) (citing *Wilson v. Mitchell*, 498 F.3d 491, 497-98 (6th Cir. 2007); *Joseph v. Coyle*, 469 F.3d 441, 449 (6th Cir. 2006)). "Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a federal court may grant a writ of habeas corpus only if the state courts ruled in a way contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court." *Parker*, 506 F.3d 447-48 (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *Varner v. Stovall*, 500 F.3d 491, 494-95 (6th Cir. 2007)); *see also Tinsley v. Million*, 399 F.3d 796, 801 (6th Cir. 2005). "A state-court decision is an unreasonable application of clearly established federal law if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Parker*, 506 F.3d at 448 (quoting *Williams*, 529 U.S. at 407-08). "When assessing unreasonableness, 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Id*. (quoting *Williams*, 529 U.S. at 411). Furthermore, "[f]indings of fact made by the state court are presumed correct, and this presumption may be rebutted only by 'clear and convincing evidence.'" *Tinsley*, 399 F.3d at 801-02 (citing 28 U.S.C. § 2254(e)(1); *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003)); *see also Eady v. Morgan*, 515 F.3d 587, 595 (6th Cir. 2008).

As framed by AEDPA, the issue before this Court is whether the District Court erred in concluding that the state court unreasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979). *Parker*, 506 F.3d at 448. "*Jackson v. Virginia* established the test for challenges based on sufficiency of the evidence." *Eady*, 515 F.3d at 595. It held that a reviewing court's task is

> to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

443 U.S. at 318-19 (emphasis in original). In other words, "[u]nder *Jackson*, habeas corpus relief is appropriate based on insufficient evidence only where the court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker*, 506 F.3d at 448. Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA. *Id*. "Where we consider the [trier-of-fact's] verdict, we do so 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Id*. (quoting *Jackson*, 443 U.S. at 324 n.16; *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006)).

**III.**

Tucker was charged with, and convicted of, second-degree home invasion, which is defined by the statute in the following terms:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the second degree.

Mich. Comp. Laws § 750.110a(3). Parsing the statutory language to fit this case, Tucker could be found guilty only if it was proved beyond a reasonable doubt that he: (1) entered a dwelling without permission; and (2) had the intent to commit a larceny therein. There is no dispute that Sutliff's home qualifies as a dwelling under the statute. Furthermore, there is no dispute that Tucker's presence in Sutliff's home would have been without permission. Thus, as to the first element, the only question for the trier-of-fact was whether there was proof beyond a reasonable doubt that Tucker in fact had entered Sutliff's home.

In assessing the adduced proof, the Court may sustain a conviction based upon nothing more than circumstantial evidence. *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt."); *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994) (same). Indeed, the Supreme Court has explained that circumstantial evidence is "intrinsically no different from testimonial evidence," and that both "may in some cases point to a wholly incorrect result." *Holland v. United States*, 348 U.S. 121, 140 (1954). "Yet . . . [i]n both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." *Id*. at 137-38. To accomplish this, "the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."[2] *Id*. at 138.

On the first element, the District Court declared that "[s]imply put, there was no evidence whatsoever that [Tucker] entered [Sutliff's] home, nor was there any evidence from which such an inference could be made." *Tucker*, 2007 WL 869164, at *5. The District Court then characterized the evidence as consisting "merely" of testimony that "[Tucker], whose family lived next door to [Sutliff] and who thus had reason to be in the area, was 25-30 feet from [Sutliff's] door, and sometime thereafter Sutliff noticed that two rings were missing." *Id*. Indeed, such a characterization lends strong credence to the District Court's conclusion that Tucker's habeas petition be granted. Based upon such reading of the evidence, the District Court thereafter explained that the "prosecution's case rested simply on the supposition that [Tucker] must have entered the home . . . based on his temporal and geographic proximity." *Id*. But this characterization omits crucial

---

[2]The dissent suggests that the problem in this case is not that the conviction lacks sufficient circumstantial evidence, but that it lacks *any* evidence whatsoever. (*See* Dissent at 9 ("without any evidence"; "finding was totally unsupported by the factual record"; trial judge made "perverted and unsubstantiated inferences"; "no evidence to support Tucker's guilt"; this case is "devoid of facts"); *id*. at 17 ("without a semblance of evidence"; "no evidence whatsoever"; Tucker is in jail "based on unsubstantiated and wild inferences")). But the dissent does acknowledge that "circumstantial evidence alone may be sufficient to sustain a conviction." (*See* Dissent at 16 (citing *Peters*, 15 F.3d at 544 ).) To the extent that the dissent believes that circumstantial evidence is insufficient by itself to sustain a conviction, the law is otherwise. To the extent that the dissent believes that there is circumstantial evidence in this case, but that it is somehow insufficient, we simply disagree.

facts found by the trier-of-fact, upon which a reasonable inference can be made that Tucker entered the home. It is not entirely clear that Michigan law would in fact forbid a finding of guilty on a home-invasion charge based solely on temporal and geographic proximity, but even if it did, there was more evidence that factored into the trial judge's conclusion than simply that Tucker was "in the area."

Specifically, the District Court's recitation suggests that Tucker was perambulating down a public sidewalk that placed him about 25-30 feet from Sutliff's door. Importantly, however, Tucker was not so innocently observed, but instead Sutliff saw Tucker jump out of Sutliff's back yard, which alone would arouse strong suspicion in any factfinder. Then, Tucker began running away from the fence he just scaled, and when he came within six feet of the homeowner standing in his own yard, Tucker made eye contact with Sutliff, but then kept running without so much as even trying to explain why he had just come out of the homeowner's fenced property. This interaction, or lack thereof, between the perpetrator and the homeowner would heighten a rational factfinder's suspicion because it is demonstrative of guilty conduct of some kind, even if that conduct is merely trespassing. Indeed, even the dissent appears to acknowledge that proximity plus flight would be sufficient evidence of entry. (*See* Dissent at 14.)

Contrary to the District Court's characterization, there is more. Indeed, after seeing Tucker flee the scene, Sutliff then went into his back yard to enter his house through the back door because he had locked the front door. Sutliff testified at trial that, it being a hot August day, he had the air conditioning on in his house, and thus remembered having closed the back door before he went outside to mow the yard. Approaching his back door after having seen Tucker exiting Sutliff's back yard, Sutliff observed the back door standing ajar. This fact alone might make Sutliff, or a rational factfinder, believe that Sutliff was simply mistaken in his belief that he had closed the door before going out to mow. But, of course, this is not a lone fact. Instead, it is added to the previous observations of Tucker jumping over the fence from Sutliff's back yard, and Tucker declining to explain such behavior when he immediately thereafter saw Sutliff observing him. If Sutliff is believable in his testimony that he observed Tucker, and not someone else; and if Sutliff is also believable in his testimony that he had closed the door, but then found it open after observing Tucker, then these facts combined provide a strong inference that Tucker entered Sutliff's home.

The dissent expresses concern that the only evidence is that of the testimony of Sutliff. (*See* Dissent at 13, 14, 15.) While it might be true that no Michigan case has convicted someone of home invasion based solely on the homeowner's testimony, (*see* Dissent at 14), the dissent has not pointed to any case concluding that such testimony alone would be *insufficient*. Indeed, this Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction. *United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); *see also O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted). Moreover, we have not found any case where the factfinder, faced with nothing more than the victim's testimony, concluded that such testimony was credible, but then refused to convict. In short, Sutliff's testimony was all that the prosecutor had available, and the Constitution does not require anything more than a credible eyewitness. But wait, there is more.

The District Court noted that Sutliff observed Tucker "and sometime thereafter Sutliff noticed that two rings were missing." *Tucker*, 2007 WL 869164, at \*5. Of course, that is a characterization in the light most favorable to *Tucker*, rather than the prosecution; but the law requires the latter, not the former. *Parker*, 506 F.3d at 448 ("Under *Jackson*, habeas corpus relief is appropriate based on insufficient evidence only where the court finds, *after viewing the evidence in the light most favorable to the prosecution*, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis added). Viewed less charitably towards Tucker, Sutliff's testimony at trial showed that Sutliff entered his house and did not immediately notice anything unusual, so he went to his next-door neighbors to ask if they had seen Tucker in the area that day. After returning to his house, Sutliff this time did notice something unusual. First, he observed that two rings that he had left on top of his dresser were no longer there.[3] Second, Sutliff noticed that the top two drawers of the dresser were open a couple of inches, which is not the way Sutliff remembered leaving them. The missing items and the disturbed dresser drawers provide further circumstantial evidence from which a rational factfinder could conclude that Tucker had entered Sutliff's home.[4]

Indeed, the combination of all these facts–Tucker jumping over the fence *from* Sutliff's back yard; Tucker failing to explain his behavior to the person he knew to be the homeowner; Sutliff thereafter finding the back door ajar, when it had been closed; Sutliff observing that two rings were missing from his dresser; and Sutliff noticing that his top two dresser drawers were open, when they had been closed–provides a strong basis upon which to conclude that the prosecution proved its case beyond a reasonable doubt as to the first element of second-degree home invasion, namely that Tucker entered Sutliff's home without permission. Stated differently, the above evidence is strongly indicative that *someone* entered Sutliff's home without permission that day, and that the *only* person observed leaving the property was Tucker, and that he left at a rapid pace. Thus, it was not unreasonable for the trier-of-fact to link all these facts together to conclude that Tucker had entered Sutliff's home that day without permission.

As previously noted, to be found guilty of second-degree home invasion in Michigan, the prosecution had to prove beyond a reasonable doubt that Tucker: (1) entered a dwelling without permission; and (2) had the intent to commit a larceny therein. Mich. Comp. Laws § 750.110a(3). After addressing the first element regarding entry of a dwelling without permission, we next turn to the second element involving the intent to commit a larceny therein. The District Court focused its attention almost exclusively on the element of entry of the dwelling. It gave little, if any, attention to the element of intent to commit a larceny, ostensibly because it had already found a

---

[3]As the dissent notes, Sutliff testified that his rings were missing, but his watch, which he left next to his rings, was still there. To the extent that this fact suggests that Tucker cannot be guilty because he would not have taken just the rings and not the watch, we disagree. Indeed, Sutliff's credibility is arguably enhanced by not trying to accuse Tucker of stealing more than he did, notwithstanding the dissent's suggestion that Sutliff had an axe to grind with Tucker based upon prior interactions. (*See* Dissent at 10.)

[4]The dissent accepts the District Court's characterization that "the evidence [offered] showed nothing more than that petitioner was *near the home* at about the time the rings went missing." (Dissent at 15 (quoting *Tucker*, 2007 WL 869164, at \*6) (emphasis added).) In addition, the dissent declares that "[t]o infer that Tucker took the rings Sutliff allegedly owned solely based on the averred proximity of Tucker to Sutliff's house is to infer a fact from an inference." (*Id*.) But as the trial transcript demonstrates, and the trial judge articulated, the evidence shows much more than Tucker casually strolling down the sidewalk. Instead, it shows that he was not merely "near the home," but *fleeing the back yard*. Moreover, we need not agree on whether the evidence sufficiently proves that Tucker *actually stole* the rings–or that the rings ever existed–to conclude that there is evidence sufficient to support a finding that Tucker *entered* the home. Indeed, the testimony that the drawers were disturbed, combined with Tucker fleeing the back yard, is sufficient to conclude that he entered Sutliff's home because the statute merely requires proof of entry into the dwelling without permission, with *intent* to commit a larceny, not that a larceny *actually* occurred. And the trial judge found that "the address was entered without permission and that it was done with the *intent* to commit a larceny." (JA at 92 (emphasis added).)

reason to grant the habeas petition. But the record provides sufficient evidence to support a finding that Tucker, having entered Sutliff's home, had the intent to commit a larceny.

In a recent home invasion case, the Michigan Court of Appeals explained that "'[a]lthough a presumption of an intent to steal does not arise solely from the proof of breaking and entering,' the felonious intent for a breaking and entering crime may be established by inferences from circumstantial evidence, including the nature, time, and place of the defendant's acts." *People v. Green*, 2008 WL 886201, at \*2 (Mich. App. Apr. 1, 2008) (quoting *People v. Palmer*, 42 Mich. App. 549, 551-552 (1972), and citing *People v. Uhl*, 169 Mich. App. 217, 220 (1988); *People v. Riemersma*, 104 Mich. App. 773, 780 (1981)). Furthermore, "[b]ecause it is difficult to prove a defendant's state of mind, minimal circumstantial evidence is sufficient." *Id.* (citing *People v. Fetterley*, 229 Mich. App 511, 518 (1998)). In *People v. Green*, the Michigan Court of Appeals rejected the defendant's argument that intent was not proven by virtue of the fact that he had no stolen property in his possession at the time of his arrest. 2008 WL 886201, at \*3. The *Green* court explained that a jury could reasonably find that the defendant had the requisite intent to commit a larceny because there was evidence that he had gone through drawers, cupboards, and other containers, in an apparent search for something of value to purloin. *Id.*

Here, Sutliff testified that the top two drawers to his dresser were open, as though Tucker had gone through them. Furthermore, the two rings that were on top of the dresser were missing. These two facts provide sufficient evidence that Tucker had not innocently entered Sutliff's house thinking it was his own and then casually walked out when he realized it was not, but instead entered Sutliff's house with the intent to commit a larceny. Furthermore, while it is not unreasonable to conclude that Tucker in fact did commit a larceny by taking the rings, it is enough that Tucker simply had the intent, as demonstrated by the rifling through drawers. It is irrelevant that the rings were never found in Tucker's possession. Indeed, as the Michigan Attorney General points out, Tucker, having seen Sutliff as he was running away from the scene, would be on heightened notice not to be found in possession of the fruits of his larceny. Accordingly, we find that there was sufficient evidence for the factfinder to conclude that Tucker had the intent to commit a larceny.

The District Court erred in finding that there was insufficient evidence to support Tucker's state conviction. On this point, the dissent suggests that we owe some level of deference to the fact that "[t]wo different federal judges . . . reviewed Tucker's conviction, finding that he was wrongfully convicted." (*See* Dissent at 17.) But we review *de novo* a district court's decision to grant or deny habeas corpus relief, *Parker*, 506 F.3d at 447, and deference, AEDPA tells us, goes to the three state courts that considered this matter. Accordingly, under the strict standards applied to habeas petitions, we cannot ignore the principles of federalism that undergird deference to the *state court's* findings, especially in terms of credibility of a witness, which is so difficult to ascertain from a cold record. *Sumner v. Mata*, 449 U.S. 539, 547 (1981) ("This interest in federalism recognized by Congress in enacting § 2254(d) requires deference by federal courts to factual determinations of all state courts."); *see also Parker v. Dugger*, 498 U.S. 308, 320 (1991); *Patton v. Yount*, 467 U.S. 1025, 1040 (1984) (explaining that even when "the cold record arouses some concern," a federal court may not overturn the factual findings of a state court on habeas review); *Wainwright v. Goode*, 464 U.S. 78, 85 (1983); *Van Hook v. Anderson*, 488 F.3d 411, 425 (6th Cir. 2007) ("[W]hen two different 'conclusions find fair support in the record,' a federal court may not 'substitut[e] its view of the facts for that of the [state] [c]ourt.'") (quoting *Wainwright*, 464 U.S. at 85). In sum, we conclude that, based upon the evidence adduced at trial, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318.

## IV.

For the foregoing reasons, this Court **REVERSES** the District Court's grant of Tucker's habeas petition.

------------------

**DISSENT**

------------------

DAMON J. KEITH, Circuit Judge, **dissenting**. The majority's opinion flagrantly violates the Fourteenth Amendment. I therefore vehemently **DISSENT**. It is "[b]etter that ten guilty persons escape than that one innocent suffer." 4 William Blackstone, Commentaries at 358. This powerful and wise axiom reveals that a court commits the ultimate injustice by convicting and imprisoning a person based on insufficient evidence. Such a judicial transgression contravenes the most important right our Constitution affords the accused: "the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); U.S. Const. Amend. XIV, § 1. Apparently neither the state trial judge nor the majority ever read or understood the Constitution, for in the instant matter, they recklessly disregarded this fundamental requirement of proof beyond a reasonable doubt by convicting Defendant Raymond Tucker of home invasion without any evidence sufficient to prove his guilt.

In a bench trial with no jury, absolutely no physical evidence, and no witnesses aside from the accuser himself,[1] the trial judge astonishingly convicted Tucker of home invasion without any evidence that Tucker *ever entered the accuser's home*. The state trial judge determined that "the address was entered without permission and that it was done with the intent to commit larceny," (J.A. 88), but this finding was totally unsupported by the factual record. As the federal district court, in reviewing Tucker's habeas petition, emphatically stressed, "There was *no evidence*—either eyewitness testimony or physical evidence—presented that [Tucker] was actually in [his accuser's] home, nor was there evidence which connected [Tucker] to the rings that were taken." *Tucker v. Palmer*, 2007 WL 869164, at *5 (E.D. Mich. Mar. 22, 2007) (emphasis added). The state trial judge's perverted and unsubstantiated inferences "alone cannot constitute sufficient evidence to prove beyond a reasonable doubt that [Tucker] entered the home, nor can the Michigan court's conclusion that evidence was sufficient be deemed reasonable." *Id.*

In evaluating this case, it is important to remember that "no state can deprive particular persons or classes of persons of equal and impartial justice under the law." *Caldwell v. State*, 137 U.S. 692, 697, 11 S.Ct. 224, 34 L.Ed. 816 (1891). This concept of "equal justice under law" is not just rhetoric to be written and forgotten; this Court must transform these words into a living truth. *See Cooper v. Aaron*, 358 U.S. 1, 19-20, 78 S.Ct. 1401, 3 L.Ed.2d 19 (1958). Where there is no evidence to support Tucker's guilt, how can we possibly declare that his conviction comports with "equal justice under law"? It is frightening that, in a case this devoid of facts, the prosecutor could have ever prosecuted Tucker in the first place. No reasonable jury (or judge), by any stretch of the imagination, could come to the conclusion that Tucker committed home invasion beyond a reasonable doubt.

The majority, however, takes a cavalier attitude to condemning a man to prison where there is absolutely no evidence to support the key element of home invasion—entry into the dwelling, and I shall not and will not stand idly by as the majority condones and facilitates this miscarriage of justice. The majority claims to have "carefully and thoroughly review[ed]" the record below. Yet after presenting an inaccurate and unsupported account of the facts, the majority hides behind the AEDPA statute and claims that because its hands are tied, injustice must prevail. It is truly sad that

------------------

[1] The accuser, who has poor vision due to his diabetes, concedes that he was not wearing his glasses when he allegedly saw Tucker near his home and that he had not seen Tucker in years.

the majority does not feel similarly tied to the Constitution and the presumption of innocence, refusing to recognize that speculation of guilt must never trample over the rights of the accused. It is inconceivable to me that the majority, under these facts, could have reached the conclusion that this man received a fair and impartial trial and was proven guilty beyond a reasonable doubt. Tucker's conviction and the majority's affirmation of that conviction constitute an egregious miscarriage of justice. I vehemently and vigorously **DISSENT**.

I.

Given the majority's terse and incomplete recitation of the facts, I feel it necessary to give a more comprehensive account of the trial court proceedings. At Tucker's trial, Sutliff testified that on August 18, 2003, he was mowing his lawn when he saw a man "scale[] the small fence that encloses [his] backyard and [come] over into the front [yard]." (J.A. 70.) Sutliff said that the fence the man scaled is about 20 to 25 feet from the back door of his home. (J.A. 11.) Sutliff claimed that in coming to his front yard, the man passed within six feet of him. He claimed that the man was running, but had slowed down momentarily after having passed him. However, Sutliff, upon seeing the man, did not speak to him. Sutliff claims that he recognized the man as Raymond Tucker, the son of the family living next door to him. Sutliff also testified, however, that he could not remember the last time he had seen Tucker but that it had probably been "several years," that Tucker had moved out of his neighborhood over twenty years ago, and that his eyes "fluctuate" because he is diabetic, sometimes requiring glasses to see clearly. He was not wearing glasses at the time he claimed he saw Tucker. (J.A. 75, 77, 81.) Moreover, Sutliff testified that he had actually been "looking for [Tucker]," in response to a recent rash of break-ins in his neighborhood.[2] (J.A. 75.) In fact, he had just recently told police that Tucker "was paroled in March (2003) and had *absconded* a week later," suggesting that perhaps they too should be on the look out for Tucker. (J.A. 76) (emphasis added). Sutliff said that he believed this information to be correct because he had been "tracking" Tucker using the Department of Corrections's Offender Tracking Information System. (J.A. 74.)

After allegedly seeing Tucker, Sutliff went into his house through the back door. Sutliff testified that he remembered having previously shut the back door and claimed that, after having seen Tucker, the door was "ajar." (J.A. 79.) He also claimed that the "top two drawers [of his dresser] were open about just a couple of inches which is unusual." (J.A. 79.) In his initial search of his home, however, Sutliff did not notice anything missing. He then went to his neighbor's house, where Tucker's parents lived, and asked them if they had seen Tucker. The neighbors informed him that they had not. Afterward, Sutliff returned to his house and searched his home again, this time noticing that two rings he allegedly had placed on top of his dresser were missing. He claimed that one of the rings was a "pinkie ring" while the other was a "retirement ring" from Sutliff's prior workplace. (J.A. 72.) Sutliff guessed that the rings were worth about $500 combined. He testified that the rings were laying on top of his dresser with his watch, but that the watch was not taken. Moreover, Sutliff said that "the dresser was kind of cluttered on top." (J.A. 73.) Shortly thereafter, Tucker was arrested for breaking into Sutliff's house and stealing his rings.

Following a bench trial with only Sutliff's testimony submitted as evidence, the state trial court found that the prosecution had proven its case beyond a reasonable doubt, and convicted Tucker of home invasion in the second degree. In evaluating the sufficiency of the evidence submitted by the prosecution, the trial judge stated:

---

[2]Specifically, Tucker's counsel asked Sutliff, "And you've attributed these break-ins to his release on a parole; is that not correct, sir?" To which Sutliff replied, "I can't say on the other break-ins that I'm accusing him, I'm just saying it's a coincidence." (J.A. 75.)

Now, obviously there is no what you might call direct evidence about him being there, but Mr. Sutliff indicated that he had left the back door unlocked but essentially was closed. And after seeing this, and obviously based on his prior experience,[3] and I think with Mr. Tucker would, I guess, cause immediate concern to do a further investigation, he noticed that the door was ajar, went in. Initially just saw that some things had been disturbed and went out and came back in fairly immediately after that and found out there were some items that were missing.

I'm persuaded that the prosecution has proven their case beyond a reasonable doubt there, that the address was entered without permission and that it was done with the intent to commit larceny, and more importantly that the witness has identified [Tucker] as the person that entered the dwelling and I am persuaded beyond a reasonable doubt that he identifies this person as the person and not because of some prior history or some kind of vendetta, but that he is the person that he saw.[4]

(J.A. 88.) Subsequently, the state trial court sentenced Tucker to an indefinite term of imprisonment of seven to fifteen years. Tucker then filed an application for leave to appeal to the Michigan Court of Appeals. In his application, he claimed that his conviction was based on insufficient evidence and therefore violated his due process rights. The state appellate court denied Tucker's application "for lack of merit in the grounds presented." (J.A. 98.) Proceeding *pro se*, Tucker sought leave to appeal this issue to the Michigan Supreme Court. The supreme court, in a standard order, denied Tucker's application for leave to appeal.

On January 19, 2006, Tucker filed an application for a writ of habeas corpus. As grounds for the writ, he claimed insufficiency of evidence, the same claim that he had raised earlier with the state courts. A federal magistrate judge for the Eastern District of Michigan filed a Report and Recommendation on December 15, 2006, recommending that Tucker's application be granted. On March 22, 2007, the federal district court adopted the magistrate judge's recommendation, granting Tucker's petition and ordering that he be released from prison. In its opinion, the district court emphasized:

Simply put, there was *no evidence whatsoever* that [Tucker] entered the victim's home, nor was there any evidence from which such an inference could be made. Sutliff merely testified that [Tucker], whose family lived next door to him and who thus had reason to be in the area, was 25-30 feet from his door, and sometime thereafter Sutliff noticed that two rings were missing. There was *no evidence*—either eyewitness testimony or physical evidence—presented that petitioner was actually in Sutliff's home, nor was there evidence which connected petitioner to the rings that were taken. The prosecution's case rested simply on the supposition that petitioner must have entered the home and stolen the rings based on his temporal and geographic proximity to the crime. This supposition alone cannot constitute sufficient evidence to prove beyond a reasonable doubt that petitioner entered the home, nor can the Michigan courts' conclusion that the evidence was sufficient be deemed reasonable.

---

[3] The nature of Sutliff's "prior experience" to which the trial court referred is unclear, as the court never explained what this "prior experience" was.

[4] The trial court's outrageous and unbelievable finding that Tucker "is the person he saw" entering the house was completely unsupported by the evidence, as Sutliff himself testified that he *never saw* Tucker enter the dwelling, inside the dwelling, or exit the dwelling.

*Tucker v. Palmer*, 2007 WL 869164, at *5 (E.D. Mich. Mar. 22, 2007) (emphasis added). The government appealed the federal district court's decision. Subsequently, on April 16, 2007, the district court issued an order staying its judgment until the Sixth Circuit decided the case on appeal.

## II.

This Court reviews *de novo* a district court's decision to grant or deny a petition for a writ of habeas corpus. *Burton v. Renico*, 391 F.3d 764, 770 (6th Cir. 2004). Because Tucker filed his habeas petition on January 19, 2006, this appeal is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202, 210, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003). Under AEDPA, a federal court may grant a writ of habeas corpus with respect to a claim that was adjudicated on the merits in state court proceedings only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id.* at 407-08, or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," *id.* at 407. Under 28 U.S.C. § 2254(e)(1), a state court's determination of a factual issue is presumed correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. This presumption applies to the factual findings that the state appellate court makes after its review of the state trial record. *Summer v. Mata*, 449 U.S. 539, 546-47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003).

## III.

Here, the State of Michigan appeals the federal district court's decision to grant habeas relief to Tucker. The government claims that the federal district court incorrectly found that the state court violated federal law by convicting Tucker on insufficient evidence. In addition, the government argues that in making its decision, the federal district court failed to view the evidence in the light most favorable to the prosecution, and also failed to draw all reasonable inferences consistent with the state trial judge's verdict.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. at 364. Thus, in an insufficiency of evidence habeas claim, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979) (emphasis in original). In reviewing a state court's application of the *Jackson* standard, a federal habeas court must determine whether the state court's application of the law was reasonable. 28 U.S.C. § 2254(d)(1). Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable.

The federal district court below determined that the state court unreasonably applied the federal standard requiring evidence sufficient for any reasonable trier of fact to find Tucker guilty

of the crime charged beyond a reasonable doubt. In making this determination, the federal district court reviewed the statute Tucker was accused of violating and the facts presented at trial. Tucker was charged with violating Michigan's home invasion statute, which provides in relevant part:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the second degree.

Mich. Comp. Laws § 750.110a(3). Pursuant to the plain terms of the statute,

> [t]he elements of second-degree home invasion are: (1) that the defendant (a) broke and entered a dwelling, or (b) entered a dwelling without permission, and (2)(a) that when the defendant broke and entered or entered without permission, he intended to commit a (i) felony, (ii) larceny, or (iii) assault therein, or (b) that the defendant committed a (i) felony, (ii) larceny, or (iii) assault while entering, present in, or exiting the dwelling.

*People v. John*, No. 263082, 2006 WL 2872553, at *1 (Mich. Ct. App. Oct. 10, 2006) (per curiam) (unpublished); *see also People v. Nutt*, 469 Mich. 565, 593, 677 N.W.2d 1, 16 (2004).

The facts presented at trial consisted solely of the testimony of the alleged victim, Sutliff.[5] Sutliff testified that he saw Tucker running from his backyard, he noticed that his back door was "ajar," two rings he thought he placed on his dresser were missing, and the drawers of his dresser were slightly open. However, the federal district court found that none of these alleged facts could be used by any reasonable trier of fact to find beyond a reasonable doubt that Tucker entered Sutliff's home, the first element of the home invasion statute. As noted above, the federal district court stated:

> There was *no evidence*—either eyewitness testimony or physical evidence—presented that petitioner was actually in Sutliff's home, nor was there evidence which connected petitioner to the rings that were taken. The prosecution's case rested simply on the supposition that petitioner must have entered the home and stolen the rings based on his temporal and geographic proximity to the crime. This *supposition alone cannot constitute sufficient evidence to prove beyond a reasonable*

---

[5] The majority attempts to support its conclusion that Tucker's conviction was constitutionally permissible because this circuit has previously upheld convictions based on testimony of the victim alone, citing four Sixth Circuit cases. However, the cases cited by the majority are *totally inapplicable*. In each of these cases, the victim's testimony directly proved each of the key elements of the crimes. *United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) (Where defendant was convicted of knowingly transporting a woman in interstate commerce for immoral purposes, the prosecuting witness testified that the defendant had the requisite intent to transport her for the purpose of prostitution.); *O'Hara v. Brigano*, 499 F.3d 492, 500-01 (6th Cir. 2007) (Where defendant was convicted of rape and kidnaping, the victim testified that the defendant abducted her from a parking lot and forcibly raped her by performing oral sex on her.); *United States v. Howard*, 218 F.3d 556, 559 (6th Cir. 2000) (Where defendant was convicted of aggravated sexual assault and wanton endangerment, the victim testified that defendant "beat her and forcibly performed oral sex on her at knife-point."); *United States v. Jones*, 102 F.3d 804, 806-07 (6th Cir. 1996) (Where defendant was convicted of conspiracy to possess with intent to distribute cocaine, attempt to possess cocaine with intent to distribute, and use of a firearm during a drug trafficking crime, two undercover Drug Enforcement Administration officers testified that they personally met and negotiated a drug deal with defendant.). In contrast, Sutliff's testimony was woefully inadequate because, even taking his statements at face value, his testimony never directly spoke to the question of entry into his home. He never testified that he saw Tucker enter or exit the home.

*doubt* that petitioner entered the home, nor can the Michigan courts' conclusion that the evidence was sufficient be deemed reasonable.

*Tucker*, 2007 WL 869164, at *5 (emphasis added).

In support of its conclusion, the U.S. district court noted that Michigan state court home invasion cases have found sufficient evidence of entry where there was a combination of other evidence that gave rise to an inference that the defendant entered the home, as well as evidence of proximity. The other evidence often showed possession of stolen property, possession of the tools used to gain entry, as well as evidence of consciousness-of-guilt, such as flight.[6] *See People v. Horton*, No. 256740, 2005 WL 3077152, at *2 (Mich. Ct. App. Nov. 17, 2005) (per curiam) (unpublished) (finding the evidence sufficient to convict defendant of second-degree home invasion because, in addition to evidence of proximity, the prosecution presented evidence that the defendant attempted to use a credit card stolen from the victim's dorm room and property stolen from the room was found in the car defendant was driving); *People v. Quarles*, No. 188014, 1997 WL 33347964, at *1 (Mich. Ct. App. May 16, 1997) (unpublished) (finding the evidence sufficient to convict defendant of breaking and entering an occupied dwelling because the prosecution presented evidence that the defendant not only fled the police shortly after the home invasion but was also found both with property stolen from the home in his car and on his person, and with a screwdriver of the type used to gain entry into the home); *People v. Potts*, No. 245588, 2004 WL 1365954, at *1 (Mich Ct. App. June 17, 2004) (per curiam) (unpublished) (finding the evidence sufficient to support defendant's conviction of first-degree home invasion because eyewitnesses directly testified that the defendant entered the home). Michigan courts have never found a defendant guilty of entering someone's home solely on the testimony of the home owner and nothing else.

Given the absence of any evidence that Tucker entered the home, I am compelled to agree with the federal district court's ruling that no reasonable fact-finder could find *beyond a reasonable doubt* that Tucker was guilty of home invasion. There was no evidence showing that Tucker damaged Sutliff's property to gain entrance into his house, there were no fingerprints placing Tucker in the Sutliff's home, there was no one who claims they saw Tucker in the Sutliff's home, there was no one who claims they saw Tucker exiting the Sutliff's home,[7] the rings Sutliff claims Tucker stole were never found, and there was no evidence found on Tucker's person or in his possession that could link him to Sutliff's home.

The majority opinion seems to suggest that the federal district court reached its conclusion based on a mis-appreciation of the facts. First, the majority suggests that the federal district court mistakenly thought that Sutliff merely saw Tucker "perambulating down a public sidewalk," not jumping his fence. The majority's characterization of the federal district court's view of the facts, however, is wrong. The Report and Recommendation adopted by the federal district court clearly states that "Sutliff stated he saw [Tucker] jump over a fence, coming from the area of Sutliff's backyard towards Sutliff who was in his side yard." (J.A. 99.) Second, the majority suggests that the federal district court did not properly consider the fact that Tucker was seen "fleeing" Sutliff's

---

[6]The majority seems to suggest that proximity and flight alone would be sufficient evidence of entry. However, evidence of flight in home invasion cases, such as that used in *Horton*, 2005 WL 3077152, at *2, involved flight from security guards where the guards were yelling at defendants to stop and included evidence that defendants had actually used and been apprehended with property stolen from the dwelling. Here, Tucker, if he was fleeing at all, was merely running and chose not to greet the man who had been accusing him of burglary and tracking his movements via the Department of Corrections's Offender Tracking Information System. The rings were never found, much less found in Tucker's possession, and he could easily have been going to his parents' house, as the fence that he allegedly "scaled" borders his parents' yard.

[7]Sutliff testified that he saw the defendant coming from his backyard, not that he saw the defendant exiting his home.

back yard. The federal district court, however, did not consider this "fact" because Tucker was never seen "fleeing" the backyard. The state trial court did not find, nor did Sutliff testify, that Tucker was seen "fleeing" anything. As previously stated, Tucker was allegedly seen jumping a fence and running. To conclude that Tucker was "fleeing" is the very act of inferring a fact from an inference, and perhaps the act of an active imagination. Finally, the majority seems to give great weight to the fact that Tucker did not speak to Sutliff as he passed him in his yard. It is beyond my understanding why this is relevant. With Sutliff being so suspicious of Tucker, it defies reason that Sutliff himself, upon seeing Tucker in his backyard, would not speak to Tucker. A defendant does not have to explain his alleged actions, before, during, or after they take place. Again, as emphasized throughout this dissent, it is the *government's* burden to prove a defendant's guilt, not the defendant's burden to prove his innocence.

As previously mentioned, and noted by the federal district court, "the evidence [offered] showed nothing more than that [Tucker] was near the home at about the time the rings went missing," *Tucker v. Palmer*, 2007 WL 869164, at *6 (E.D. Mich. Mar. 22, 2007). No *rational* trier of fact could find, beyond a reasonable doubt, from such evidence that Tucker entered Sutliff's home and stole rings therein. To infer that Tucker took the rings Sutliff allegedly owned solely based on the averred proximity of Tucker to Sutliff's house is to infer a fact from an inference. The state trial judge inferred from Tucker's presence in Sutliff's backyard that he entered Sutliff's home, and then from that inference, inferred that Tucker stole Sutliff's rings. In fact, there never was any proof that the rings existed in the first place. Such speculation is impermissible. *United States v. Ross*, 92 U.S. 281, 283-284, 23 L.Ed. 707 (1875) (holding that arriving at a conclusion of fact by inferring from inferences is generally not admissible). "Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed." *Ross*, 92 U.S. at 284. Here, the prosecution offered no evidence other than Sutliff's testimony to prove that Tucker was in Sutliff's house. Sutliff's testimony alone, even when viewed in the light most favorable to the prosecution, is insufficient for a rational fact finder to find Tucker guilty beyond a reasonable doubt of home invasion.

In sum, the government failed to prove beyond a reasonable doubt that Tucker committed home invasion. Although the "any rational trier of fact" standard sets a high bar, it is not an insurmountable one that should be used brazenly to sweep justice aside after a federal district court has overturned a wrongful conviction.

This Court's habeas jurisprudence in cases involving insufficiency of evidence has repeatedly distinguished between evidence that can lead to *reasonable speculation* of guilt and *evidence sufficient to prove guilt beyond a reasonable doubt*. Here, the government's sparse evidence, at best, provided *speculation* that Tucker committed the crime. This Court is to grant habeas relief when convictions are based solely upon mere reasonable speculation instead of evidence sufficient to prove guilt beyond a reasonable doubt. And it has done so, in fact, in cases supported by evidence much more substantial than what was presented here. Just last year, in *Parker v. Renicio*, 506 F.3d 444, 452 (6th Cir. 2007), for example, a federal district court reversed the state firearm possession conviction of a defendant found with a firearm within his plain sight in a car. The evidence in *Parker* was significantly greater than the evidence we have here. In *Parker*, police officers observed the defendant in the car in close proximity to the weapon. Just as in Tucker's case, in *Parker* the government also argued that Parker's proximity to the gun proved possession. Moreover, the defendant fled from law enforcement and was actually in the car with other defendants who had conspired to kill and had just shot the victim. Based on this evidence, the state jury convicted the defendant. On habeas review, however, the federal district court reversed the conviction, finding insufficient evidence to convict the defendant of possession. The Sixth Circuit upheld the reversal, finding that no reasonable trier of fact could find that the defendant had any indicia of control over the weapon. Unlike *Parker*, in the instant case, there is no physical

evidence of a crucial element of the crime—Tucker's entry into the home.  Yet the majority finds the speculative claims of the accuser sufficient to *reverse* the federal district court.

A number of our other rulings have upheld reversals of state convictions based on insufficient evidence, even where physical evidence has been available.  *See e.g.*, *Brown v. Palmer*, 441 F.3d 347, 352 (6th Cir. 2006) (affirming the district court's grant of a writ of habeas corpus when the defendant's presence at the scene of a crime and brief relationship with the gunman were insufficient to establish beyond a reasonable doubt that the inmate aided and abetted a gunman); *Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir. 1981) (affirming the district court's grant of a writ of habeas corpus when the defendant was at the scene with the individuals who committed arson that resulted in the death of the victim).  This Court has been clear that, although "the facts viewed in the light most favorable to the state may . . . create[] 'reasonable speculation,'" the government's evidence must prove its case beyond a reasonable doubt.  *Id.*  If the majority is unwilling to distinguish between the type of speculation that forms the basis of this case, and the requirement that evidence be sufficient to convict beyond a reasonable doubt, I cannot imagine a scenario in which it would.

The government, however, claims that if we find that insufficient evidence supported Tucker's conviction, we will essentially be eliminating the possibility of convicting a defendant on circumstantial evidence.  Nothing could be further from the truth, and the government's position is simply absurd.  The Supreme Court "has never questioned [the] adequacy [of circumstantial evidence] in criminal cases, even though proof beyond a reasonable doubt is required," *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), and a decision in favor of Tucker here would not alter that.  In vacating Tucker's sentence, we would simply be holding that the circumstantial evidence presented in the instant matter, standing alone, was insufficient to support a conviction, not that a conviction can never be based on circumstantial evidence.  *See United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994) (holding that circumstantial evidence alone may be sufficient to sustain a conviction).  This is not a close case in which circumstantial evidence tips the balance in favor of guilt. Rather, the lack of proof here is so beyond the pale of what is constitutionally required that I can come to but one conclusion:  the evidence presented was woefully insufficient to prove Tucker's guilt beyond a reasonable doubt as a matter of law.

Lastly, the majority seems confused as to what I view to be the "problem" in this case.  Once again, to put it more simply, my view is that there was absolutely no evidence presented that sufficiently supported a finding that Tucker entered Sutliff's home.  This view should be familiar to the majority as it is the exact same view of the federal district court, and is thus the issue that is being appealed. As previously mentioned, the federal district court emphasized, "[s]imply put, there was *no evidence whatsoever that petitioner entered the victim's home*, nor was there any evidence from which such an inference could be made." *Tucker*, 2007 WL 869164, at *5 (emphasis added). Clearly, there was evidence submitted in this case, but the federal district court found that there was no evidence presented as to *this particular element*.  The question before this Court, therefore, is whether there was evidence presented that sufficiently supports a finding that Tucker committed *all of the elements* of the offense charged beyond a reasonable doubt, namely that he entered Sutliff's home. Although the federal district court found that "there was no evidence *whatsoever*" presented to support such a finding that Tucker entered Sutliff's home, *id.* (emphasis added), the state trial court summarily concluded that he did.  It did so, however, without pointing to any evidence whatsoever that could be used to show Tucker's guilt beyond a reasonable doubt. Just saying it was so does not make it so.  As such, Tucker's conviction should be overturned.

IV.

I am saddened, outraged, and in fact embarrassed for our judicial system that this case has reached this point. That this Court could affirm a state trial judge's conviction and sentence of seven to fifteen years in prison without a semblance of evidence of wrongdoing is a pathetic and dismal reflection of our judicial system. The trial judge, the state courts that affirmed his conviction, and indeed this Court have ruined Tucker's life (and likely that of his family as well). This case is so devoid of evidence that Tucker should never have been prosecuted, much less convicted.

Two different federal judges—the federal district court judge and the magistrate judge—reviewed Tucker's conviction, finding that he was wrongfully convicted based on insufficient evidence. According to Michigan's home invasion statute under which Tucker was charged, Mich. Comp. Laws § 750.110a(3), the first, and most basic, element is "that the defendant (a) broke and entered a dwelling, or (b) entered a dwelling without permission." *People v. John*, No. 263082, 2006 WL 2872553, at *1 (Mich. Ct. App. Oct. 10, 2006) (per curiam) (unpublished); *see also People v. Nutt*, 469 Mich. 565, 593, 677 N.W.2d 1, 16 (2004). The prosecution, however, presented no evidence whatsoever that Tucker satisfied this principal element of home invasion—that Tucker entered the home. The federal district judge who reviewed Tucker's habeas petition found in no uncertain terms that "[t]here was *no evidence* . . . presented that [Tucker] was actually in [his accuser's] home" and that the trial judge's inferences alone were insufficient—as a matter of law—"to prove beyond a reasonable doubt that" Tucker was guilty of home invasion. *Tucker*, 2007 WL 869164, at *5 (emphasis added). By allowing this conviction to stand, Tucker's conviction creates a ripple effect through our entire criminal justice system, allowing innocent people to languish in jail based on unsubstantiated and wild inferences.

To conclude, I would like again to quote the sage words that "[b]etter that ten guilty persons escape than that one innocent suffer." 4 William Blackstone, Commentaries at 358. This case is a perfect illustration of the provocative and profound need for equal justice under law. Equal justice under law does not mean that we, as a court, should condone and participate in the miscarriage of justice. Where a state trial court ignores and abuses the fundamental constitutional requirement and meaning of proof beyond a reasonable doubt, it is the responsibility of this Court to restore that constitutional guarantee. The majority turns a blind eye to this basic constitutional responsibility and undermines the concept of equal justice under law. I vigorously **DISSENT**.