**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0099n.06

No. 07-3983

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 16, 2010**
LEONARD GREEN, Clerk

JULIOUS McCRAY,                                    )
                                                   )
    Petitioner-Appellant,                          )      ON APPEAL FROM THE UNITED
                                                   )      STATES DISTRICT COURT FOR THE
v.                                                 )      SOUTHERN DISTRICT OF OHIO
                                                   )
WARDEN, LONDON CORRECTIONAL                        )
INSTITUTION,                                       )      OPINION
                                                   )
    Respondent-Appellee.                           )

Before:  GILMAN and GIBBONS, Circuit Judges; and ANDERSON, District Judge.[*]

    **S. THOMAS ANDERSON, District Judge.**  Julious McCray, an Ohio prisoner proceeding

*pro se*, was convicted of burglary and receiving stolen property.  McCray was sentenced to twenty-

two years in prison on those and other convictions.  The Ohio appellate courts denied McCray all

post-conviction relief.  He subsequently sought federal habeas corpus relief under 28 U.S.C. § 2254.

The parties consented to have the matter adjudicated by a United States Magistrate Judge, and the

Magistrate Judge denied the habeas petition on the merits.  The Magistrate Judge granted McCray

a certificate of appealability on the one claim that his convictions for burglary and receiving stolen

property were not supported by sufficient evidence.  This Court denied McCray a certificate of

appealability on the remaining claims asserted in the habeas petition.  For the reasons set forth

below, we **AFFIRM** the judgment of the district court.

---

[*] The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

## I. BACKGROUND

### A. Factual background

McCray was convicted of the burglary of Star Wigs & Beauty Supply in Cincinnati, Ohio. The owner of Star Wigs discovered McCray in the basement of the store, an area that was not open to the public, and called the police. The basement was used for storage and contained the owner's personal belongings. There was no merchandise for sale in the basement. Detective Andrew Davis of the Springfield Police Department testified that he observed an "Employees Only" sign at the top of the stairs to the basement. Detective Jim Grindle, who interviewed McCray after his arrest at Star Wigs, testified that McCray admitted that he was not supposed to be in the basement because he saw the "Employees Only" sign. In addition, Officer David Ogden, the first officer to respond to the store owner's call to the police, testified that McCray said he was in the basement looking for a job. However, McCray had no resume, references or other job-seeking materials with him.

Although McCray did not admit to being in Star Wigs for the purpose of committing burglary, he did admit to committing other burglaries and related thefts in various offices and businesses and described his method for doing so. McCray said that if he was observed, he would explain his presence by making up a reason to be there, such as looking for work or looking for an attorney or parole officer in the building. He bragged that he had beaten the police on technicalities in the past.

After McCray was arrested at Star Wigs, the police discovered that he was in possession of

a cell phone. Captain William Hafer of the Springdale Police Department testified that he contacted the owner of the cell phone and determined that the phone was stolen. The owner of the phone had not reported it stolen because he was not aware that it had been stolen until he spoke to Captain Hafer. The owner kept the cell phone in his desk drawer at work, and when he looked in the drawer, he discovered that the phone was missing. He had not given anyone permission to use the phone. The owner said that the phone was worth $800.

**B.     Procedural background**

McCray was indicted on six different counts, two in connection with his arrest at Star Wigs and four relating to other incidents. The two counts related to the incident at Star Wigs included one count of burglary and one count of receiving stolen property. Defendant's motion to sever the counts for trial was granted. After a jury trial on the Star Wigs charges in June 1999, McCray was convicted of burglary and receiving stolen property.[1] McCray filed a motion for a new trial, arguing jury misconduct, prosecutorial misconduct, insufficiency of the evidence, and the availability of new evidence. The trial court denied the motion.

McCray timely appealed to the state court of appeals, raising seven issues that included prosecutorial misconduct, ineffective assistance of counsel, error in denying a motion to suppress, and error in admitting evidence of McCray's prior bad acts. The Ohio Court of Appeals found no

---

[1] The jury acquitted McCray on another burglary charge that was not related to the Star Wigs incident. McCray had been charged with stealing purses from the offices of J & R Coordinating on August 24, 1998.

merit to McCray's assignments of error and affirmed the judgment of the trial court. The Ohio

Supreme Court denied McCray's application for leave to appeal.

At that point McCray sought a writ of habeas corpus from the United States District Court

for the Southern District of Ohio, raising many of the same arguments previously heard in his state

court appeal. However, the district court stayed the proceedings in order to allow McCray to file a

motion for reconsideration and motion to supplement his motion for a new trial with the Ohio trial

court, which he did on April 4, 2003. Over the next year, McCray filed a series of letters about his

motion with the trial court and then on July 9, 2004, filed a second motion to reconsider. On

December 6, 2005, McCray filed a petition for writ of *procedendo* with the Ohio Court of Appeals

in an effort to compel the presiding judge in the trial court to rule on his motions for reconsideration.

The Ohio Court of Appeals dismissed McCray's petition. McCray's appeal of that decision to the

Ohio Supreme Court was dismissed *sua sponte* for McCray's failure to prosecute. Finally, on June

14, 2006, McCray filed a motion to reinstate his habeas petition with the federal district court.

The district court found no merit to any of McCray's assignments of error and denied his

habeas petition. The district court subsequently denied McCray's motion for reconsideration. This

timely appeal followed.

## II. ANALYSIS

### A. Standard of review

Because the district court issued a certificate of appealability only with respect to McCray's

-4-

claim that his convictions for burglary and receiving stolen property were not supported by sufficient evidence, appellate review is limited to that issue. *See* 28 U.S.C. § 2253(c); *Seymour v. Walker*, 224 F.3d 542, 561 (6th Cir. 2000). We review de novo a district court's decision to grant or deny a petition for a writ of habeas corpus. *Joseph v. Coyle*, 469 F.3d 441, 449 (6th Cir. 2006). Both the district court and this court are bound to apply the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) in this case because McCray filed his petition after the AEDPA's effective date. *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003). Under the AEDPA, a federal court may grant a writ of habeas corpus with respect to a "claim that was adjudicated on the merits in State court proceedings" if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent." *Joseph*, 469 F.3d at 449-50 (brackets, citations, and internal quotation marks omitted). On the other hand, a state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000), or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Joseph*, 469 F.3d at 450 (citation and internal quotation marks omitted).

A conviction is supported by sufficient evidence if, when "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). In a habeas proceeding, however, we must not simply conduct a de novo review of the state court's application of that rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA. McCray can be granted habeas relief only if the Ohio Court of Appeals unreasonably applied the *Jackson* standard. *See Getsy v. Mitchell*, 495 F.3d 295, 315-16 (6th Cir. 2007) (en banc) ("Whether [the petitioner] is entitled to habeas relief ultimately depends on whether the [state court]'s denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence."), *cert. denied*, 128 S. Ct. 1475 (2008). This court must "determine whether it was objectively unreasonable for the [state court] to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that [McCray] committed the essential element of [the crimes charged] beyond a reasonable doubt." *See Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007).

When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, the court must ask whether the evidence itself was sufficient to convict under *Jackson.* The inquiry ends if the court determines that there was sufficient evidence to convict McCray. If the court finds that the evidence is insufficient to convict, it must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could have found McCray guilty beyond a

reasonable doubt. *Id.* The law therefore "commands deference at two levels." *Tucker*, 541 F.3d at 656.

**B.       Sufficiency of the evidence**

We hold that there was sufficient evidence to support McCray's conviction for the burglary of Star Wigs. The statute under which he was convicted provides as follows:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> . . .
>
> (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.

Ohio. Rev. Code § 2911.12(A)(2).

McCray argues that the State failed to present sufficient evidence to prove the elements of "trespass," "stealth or deception" or "purpose to commit a criminal offense." We disagree. First, under Ohio law, "trespass" includes knowingly or recklessly entering premises that are lawfully restricted to certain persons. Ohio Rev. Code § 2911.21(A)(1), (2) and (3). Notice against unauthorized use can be given by actual communication or "by posting in a manner reasonably calculated to come to the attention of potential intruders." Ohio Rev. Code § 2911.21(A)(3). The owner of Star Wigs discovered McCray in the basement of the store, an area that was not open to the public. The basement was used for storage and contained the owner's personal belongings. There was no merchandise for sale in the basement. Detective Davis testified that he observed an

"Employees Only" sign at the top of the stairs to the basement. Thus, a rational juror could find that the store owner had given adequate "notice against unauthorized use. . . by posting in a manner reasonably calculated to come to the attention of potential intruders." More importantly, Detective Grindle, who interviewed McCray after his arrest at Star Wigs, testified that McCray admitted that he was not supposed to be in the basement because he saw the "Employees Only" sign. McCray clearly trespassed in the basement, having entered the basement knowing that it was restricted to employees only.

We also find that there was sufficient evidence that McCray entered the basement by "stealth" or "deception." For purposes of Ohio's burglary statute, "stealth" is defined as "any secret, sly or clandestine act to avoid discovery and to gain entrance into or remain within a residence [business] of another without permission." *State v. Ward*, 620 N.E.2d 168, 170 (Ohio. Ct. App. 1993). Notably, *Black's Law Dictionary* (6th ed. 1990) adopted the same definition of "stealth" and cited the Ohio case which first announced this definition, *State v. Lane*, 361 N.E.2d 535, 540 (Ohio 1976). The court in *Ward* found that evidence of a defendant entering two different homes while the homeowners were occupied with other activities and without attempting to speak to the owners prior to entry was sufficient to establish that the defendant entered the homes by "stealth." *Ward*, 620 N.E.2d at 169-70. The defendant in *Ward* attempted to contact the owner and offer an explanation for being on the premises only after being discovered. *Id*. at 170. The *Ward* court found that under the circumstances the defendant wished "to avoid detection as he entered" the premises, and so the

evidence supported a finding of stealth.  *Id.*[2]

In light of the applicable Ohio law, there was sufficient evidence in this case that McCray entered the basement of Star Wigs by stealth.  We have already found that there was sufficient evidence from which to conclude that McCray was trespassing in the basement.  Since McCray was not privileged to enter the basement, it can be inferred that he entered in a clandestine manner in order to avoid discovery.  Additionally, McCray claimed that he was in the basement for the purpose of seeking a job.  However, the responding officer testified that McCray had no resume, references or other job-seeking materials with him.  McCray also made no attempt to speak to the store owner or the other employee on duty prior to entering the basement.  Like the defendant in *Ward*, McCray explained his presence in the basement only after the owner of the store discovered him there.  McCray even admitted to police that he had used the same excuse, seeking a job, when he was caught trespassing in other buildings and businesses on other occasions.  Therefore, there was sufficient evidence from which a rational trier of fact could find beyond a reasonable doubt that McCray had entered the basement of Star Wigs by stealth.

---

[2] Citing *Ward* in a series of unreported cases, the Ohio Court of Appeals has consistently held that simply gaining entry to premises without permission or authorization is sufficient to find that an offender gained entry by stealth.  *State v. Pickens*, 2008 WL 697110, at *3 (Ohio Ct. App. Mar. 17, 2008); *State v. Trikilis*, 2005 WL 1966780, at *8 (Ohio Ct. App. Aug. 17, 2005); *In re C.W.*, 2005 WL 1799317, at *4 (Ohio Ct. App. Aug. 1, 2005); *State v. Tomak*, 2004 WL 2757837, at *3 (Ohio Ct. App. Dec. 2, 2004); *State v. DeBoe*, 2004 WL 190068, at *8 (Ohio Ct. App. Jan. 30, 2004); *State v. Hibbard*, 2003 WL 352453, at *6 (Ohio Ct. App. Feb. 18, 2003); *State v. Davis*, 2002 WL 440790, at *4 (Ohio Ct. App. Mar. 2, 2002); *In re Markunes*, 1996 WL 531586, at *6 (Sept. 20, 1996); *State v. Huda*, 1994 WL 530866, at *3 (Ohio Ct. App. Sept. 29, 1994); *State v. Bell*, 1994 WL 29877, at *3 (Ohio Ct. App. Jan. 31, 1994).  *But see State v. Howard*, 2005 WL 3286600, at *3 (Ohio Ct. App. Sept. 29, 2005).

Finally, there was sufficient evidence that McCray entered into the basement for a criminal purpose. We have already noted that there was no reason to accept McCray's stated purpose for being in the basement, that is, to apply for a job. Although McCray did not admit to being in Star Wigs for the purpose of committing a crime, he did admit to committing several burglaries and related thefts on other business premises. McCray told the police that if he was observed in an unauthorized area, he would fabricate a reason for being there, such as looking for work in the building. Thus, McCray's presence in the basement of Star Wigs was consistent with his admitted modus operandi for conducting other criminal activities. Additionally, McCray admitted to police that he had stolen crack and money in the past, and the evidence showed that McCray was found in possession of a stolen cell phone in this instance. McCray boasted that he had beaten other criminal charges on technicalities. This evidence, together with the fact that McCray was knowingly in a restricted area, is strongly probative of his criminal intent.

There was also sufficient evidence to support McCray's conviction for receiving stolen property, a violation of Ohio Rev. Code § 2913.51(A), which states as follows:

> No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

Ohio Rev. Code § 2913.51(A). McCray argues that the State failed to prove that the cell phone was stolen, that McCray knew it had been obtained through the commission of a theft offense, or that it was worth more than $500.

-10-

When McCray was arrested at Star Wigs, the police discovered that he was in possession of the cell phone. Captain Hafer of the Springdale Police Department testified that he contacted the owner of the cell phone and determined that the phone was stolen. The owner of the phone had not reported it stolen because he was not aware that it had been stolen until he spoke to Captain Hafer. The owner kept the cell phone in his desk drawer at work, and when he looked in the drawer, he discovered that the phone was missing. He had not given anyone permission to use the phone. The owner said that the phone was worth $800.

Based on this testimony, there was sufficient evidence presented that the phone was stolen and that it was worth more than $500. Because McCray told Officer Grindle that it was his practice to steal items from people's workplaces, there was sufficient evidence to infer that McCray knew the phone was stolen.

The state appellate court found that McCray's sufficiency-of-the-evidence claim was without merit, as reasonable minds could have reached different conclusions as to whether each element of the crimes had been proven beyond a reasonable doubt. McCray has not demonstrated that the state court's adjudication of his sufficiency claim was either contrary to or an unreasonable application of *Jackson*.

For all of these reasons, we **AFFIRM** the judgment of the district court.